EXHIBIT E

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 1 of 102

Ronald H. Freshman, CA BAR No. 225136
Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Telephone: (858) 756-8288
Facsimile: (858) 964-1728
E-mail: ronfreshman@gmail.com

Attorney for Plaintiff Kimberly Cox

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY COX,<br><br>Plaintiff,<br><br>v.<br><br>OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY;<br><br>NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING;<br><br>THE BANK OF NEW YORK MELLON CORPORATION AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF CWMBS INC CHL MORTGAGE PASS-THROUGH TRUST 2005-02 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02; and<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>Defendants. | Case No. 5:15-cv-02253-BLF<br><br>PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF TO CANCEL INSTRUMENTS AND FOR RESTITUTION<br><br>** DEMAND FOR JURY TRIAL ** |

Pursuant to the Court granting leave to amend, KIMBERLY COX ("Plaintiff") by and through her attorney, complains and alleges specifically against OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY ("ORNTIC"); NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING ("NewPenn"); THE BANK OF NEW YORK MELLON CORPORATION AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF CWMBS INC CHL MORTGAGE PASS-THROUGH TRUST 2005-02 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02 ("BONYMCorp"); and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as follows:

## I. INTRODUCTION, STATEMENT OF THE CASE AND GENERAL ALLEGATIONS

**INTRODUCTION**

1. Plaintiff hereby sues ORNTIC, NewPenn, BONYMCorp and MERS (collectively "Defendants") for their unlawful participation and conspiracy in an attempt to "get a free house" by unlawfully foreclosing on Plaintiff's Property she has owned since 1998 and thereby collecting a debt she does not owe. Defendants are using this Court and California's statutory non-judicial foreclosure scheme claiming authority they do not have, to collect a debt that Plaintiff rescinded by operation of law pursuant to the Truth in Lending Act (15 U.S.C. § 1601 *et seq*.) and Regulation Z (12 C.F.R. § 226 *et seq*.) (collectively, "TILA") in 2007.

**Right to Rescind - Extinguishment of the Lien**

2. The transaction was subject to TILA as a refinance of Plaintiff's Property. TILA authorized the Rescission of the transaction and security instrument because Plaintiff did not receive, *inter-alia*, two copies of the notice of her right to rescind required by 12 C.F.R. § 226.23(b)(1) *et seq*. (see ¶ 14 below.) The subject transaction consummated in or about December 2004 and Plaintiff's rescission was mailed to the named "Lender" as the statutory creditor, in or about July 2007, well within the extended TILA three-year statute of repose [15 U.S.C. § 1635(f) and *Jesinoski v. Countrywide Home Loans, Inc*. (2015) 135 S.Ct. 790 ("*Jesinoski*")].

**The Rescission and Extinguishment of the Security and Lien Occurred in 2007 but Right to assert it did not accrue in this 9th Circuit until 2015**

3. The U.S. Supreme Court in *Jesinoski* held:

> "Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . by notifying the creditor, in accordance with regulations of the Board, of his intention to do so" (emphasis added). The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years." *Jesinoski*, Id. at 792

Until *Jesinoski* in 2015, this 9th Circuit erroneously held that unless a borrower has filed a suit for rescission within three years after the transaction is consummated, § 1635(f) extinguished the right to rescind and barred relief. This means Plaintiff's claim for relief to assert her TILA Rescission did not accrue until *Jesinoski* in January 2015.

**Extinguishment of the Debt**

4. Defendants are wrongfully and unlawfully pursuing foreclosure on Plaintiff's Property in an attempt to collect a purported debt which no longer exists. Plaintiff's Rescission in 2007 rendered any related debt at best, unsecured and was properly listed as such in Plaintiff's 2010 Ch. 7 and related bankruptcy schedules. Therefore, as a result of the lack of any proof of claim being filed, any challenge or opposition whatsoever to the purported debt being scheduled as unsecured, any such debt was not administered by the trustee, judicially discharged and extinguished as a matter of law pursuant to Court Order when the bankruptcy closed in 2012 along with all other unsecured debt. Because the security was rendered void pursuant to the Rescission, there was no remaining lien to ride through bankruptcy.

**Because the TILA Rescission Claim for Relief did not Accrue Pre-Petition it was not Property of the Bankruptcy Estate**

5. As a threshold matter, Defendants' claims are wrong and the Court's agreement with Defendants assertions and misdesignation of Plaintiff's Rescission as an unscheduled pre-petition cause of action that belongs to the bankruptcy estate is misplaced. Notwithstanding that Plaintiff's Rescission was a remedy, not a cause of action (see ¶ 8 below) there was no justiciable claim for relief available in this 9th Circuit because of its erroneous holding that the filing of a lawsuit was required to assert TILA Rescission. As in *Jesinoski,* Plaintiff did not file a lawsuit within three years after consummation but *did* timely and validly notice her authorized Rescission within the statue of repose. This means that <u>**Plaintiff's right to assert the Rescission did *not* accrue in this jurisdiction until the U.S. Supreme Court's unanimous decision pursuant to *Jesinoski* in January 2015 long after Plaintiff's bankruptcy case had closed**</u> and was therefore not then and not now, property of the bankruptcy estate.

6. As exemplified in *Hao v. New Century Mortg. Corp.*, 2012 U.S. Dist. LEXIS 97787 (N.D. Cal. July 13, 2012) citing *McOmie-Gray v. Bank of Am. Home Loans* (9th Cir. 2012) 667 F.3d 1325, 1329, the 9th Circuit held that the TILA statute of repose deprived a district court of subject matter jurisdiction and a party's standing, to claim a TILA rescission cause of action unless a lawsuit was filed within the three-year deadline. Accordingly, Plaintiff's Rescission could not have been

scheduled as a "claim" or "cause of action" in her bankruptcy schedules in 2010 or otherwise because there was no cause of action existing or available in the 9th Cir. until *Jesinoski* in 2015. This is just as true for the Ch. 7 Trustee as it is for the Plaintiff. Therefore Plaintiff's Rescission claim for relief was and is not, part of the bankruptcy estate (see *e.g*. *Cusano v. Klein* (2001) 264 F.3d 936 at 947 citing *Brassfield v. Jack McLendon Furniture, Inc*. (M.D. Ala. 1996) 953 F. Supp. 1424, 1433; *Erickson v. Baxter Healthcare* (N.D. Ill. 2000) 94 F. Supp. 2d 907, 912-913).

7. The definition of "accrue" as it relates to a cause of action means:

> " **<u>To come into existence as an enforceable claim or right</u>**; to arise <bracketed example omitted>.
>
> > 'The term "accrue" in the context of a cause of action means to arrive, to commence, to come into existence, or **to become a <u>present enforceable demand or right</u>**. The time of accrual of a cause of action is a question of fact." 2 Ann Taylor Schwing, *California Affirmative Defenses* § 25:3, at 17-18 (2d ed. 1996)'."
> > *Black's Law Dictionary* 10th Ed. 2014 (emphasis added).
>
> " A cause of action accrues when a suit may be maintained thereon, and the statute of limitations therefore begins to run at that time." *Osborn v. Hopkins* (Cal. 1911) 160 Cal. 501, 506; *Dillon v. Board of Pension Comm'rs* (Cal. 1941) 116 P.2d 37).

Because there was no existing ability to assert Plaintiff's TILA Rescission in the 9th Cir. until *Jesinoski* in 2015, there was no cause of action that could have been scheduled in Plaintiff's bankruptcy which closed 2 ½ years before accrual and therefore there the TILA claim for relief did not then and does not now belong to the bankruptcy estate.

**Plaintiff's TILA Rescission is not a Cause of Action but a Remedy**

8. Notwithstanding the foregoing, rescission is a remedy, not a cause of action. Although common-law "rescission" was distinguished in *Jesinoski* [*7] stating TILA was a "case in which statutory law modifies common-law practice," the principle still applies (see e.g. *Nakash v. Superior Court*, (1987) 196 Cal. App. 3d 59, 69-70 (dismissing rescission claim because it is a remedy, not a cause of action). The cause of action was actually the Lender/creditor's failure to provide the required disclosures pursuant to TILA; the *remedy* was rescission under TILA neither of which was an available claim for relief in the 9th Cir. until *Jesinoski* in 2015.

**Defendants have clouded the Title to Plaintiff's Property**

9. With the full knowledge Defendants had or should have had of Plaintiff's TILA and Reg. Z Rescission, Defendants disparaged and clouded or caused to be disparaged and clouded in conspiracy with each other, the title to Plaintiff's Property; by wrongfully recording or causing to be recorded, false instruments which has rendered the title to Plaintiff's Property unmarketable and unvendible. As a result, Defendants have caused the total diminution of the value of Plaintiff's Property and the further damages complained of herein.

10. Plaintiff seeks the Court's recordable judgment to include: (a) ordering the delivery up and cancellation of the outstanding ADJUSTABLE RATE NOTE (as the purported evidence of the "debt" which was discharged as unsecured in Plaintiff's bankruptcy); (b) designating the purported DEED OF TRUST recorded on December 21, 2004 as document No. 2004-0089505 in the County of Santa Cruz, California ("DOT") as having been rendered void pursuant to the TILA and Reg. Z rescission; (c) the cancellation and rescission of all instruments recorded subsequent to the Rescission which were likewise rendered void as a matter of law; and (d) restitution from Defendants for the harm and damages directly and proximately caused Plaintiff by Defendants' wrongful and unlawful actions.

**STATEMENT OF THE CASE AND GENERAL ALLEGATIONS**

**Plaintiff's Ownership of and Title to the Subject Property Superior to all other Adverse Claims**

11. Plaintiff purchase of the subject property commonly known as 131 Sutphen St., Santa Cruz, CA 95060 ("Property") is evidenced by the GRANT DEED recorded in Santa Cruz County (any future reference to "recording" is the recording of instruments with the Santa Cruz County, California Recorder's Office) on September 1, 1998 as document No. 1998-0051587 (see Exhibit "1" incorporated herein by this reference as "Grant Deed").

**The Refinance Transaction the Subject of this Action was Subject to TILA**

12. Plaintiff sought to refinance a prior "loan" pursuant to the transaction the subject of this action, purported to be evidenced the recorded DOT as the alleged security instrument for the subject purported Note. The Note and DOT were prepared by one DEBRA GURROLA; recorded at the request of First American Title Company; purportedly evidencing the residential mortgage

refinancing in which Plaintiff was a "consumer" as defined in 15 U.S.C. §§ 1602(e) and (i); in a "closed-end transaction" for Plaintiff's single family home and primary residence; for a credit sale as defined in 15 U.S.C. § 1602(h); and a refinancing transaction of her principal dwelling as defined in 15 U.S.C. § 1602(w); and not exempted pursuant to §1603(3). The "Lender" in the Note as further described in the DOT, was named "AMERICA'S WHOLESALE LENDER, a CORPORATION organized and existing under the laws of NEW YORK" ("AWL"). Although AWL was not actually the lender ("[a] person or entity from which something (esp. money) is borrowed", *Black's Law Dictionary* Tenth Ed., 2014); and notwithstanding that AWL did not exist as named; pursuant to and as defined in 15 U.S.C. § 1602(g) and 12 C.F.R. § 1026.2(a)(17), AWL was the statutorily designated creditor pursuant to TILA and Reg. Z and the refinancing transaction was not exempted pursuant to 15 U.S.C. § 1603 *et seq*. or 12 C.F.R. § 226.23(f). Therefore, the refinancing transaction was subject to the provisions, duties and rescission rights of TILA and Reg. Z.

**The Consummation of the Transaction, Failure to Provide the Statutory Disclosures, Rescission of the Transaction and Purported Security**

13. The refinance transaction the subject of this action was consummated when the office of First American Title Company in Santa Cruz, California closed the transaction on or about December 14, 2004. The DOT was subsequently recorded on December 21, 2004.

14. Plaintiff never received from any person, entity or any other party, the statutorily required disclosures, which included, *inter alia*: (a) two copies of the *notice of the right to rescind* as required under 12 C.F.R. § 226.23(b)(1) *et seq*., at any time, before, during or after the purported consummation of the transaction; and (b) nor were the statutory disclosures pursuant to 15 U.S.C. 1639(a) *et seq*. received by Plaintiff, which were required to be "given not less than 3 business days prior to consummation of the transaction" pursuant to 15 U.S.C. § 1639(b) *et seq*. Accordingly, pursuant to Plaintiff's rights under TILA and Reg. Z, Plaintiff timely rescinded the transaction within the extended 3-year statute of repose pursuant to 15 U.S.C. § 1635(f) and asserted her Rescission rights once they accrued in this 9th Cir. pursuant to *Jesinoski* in 2015.

15. Even a purely technical violation of TILA's disclosure provisions, such as the creditor's failure to provide a borrower with two copies of the notice that include the correct date that the rescission period expires, extends the duration of the right to rescind for three years.

> " If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."; *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 703-05 (9th Cir. 1986); and *Koga v. Eastern Sav. Bank, FSB*, 2014 U.S. Dist. LEXIS 3450 (D. Haw. Jan. 10, 2014); 15 U.S.C. 1635(f); 12 C.F.R. § 226.23(a)(3); also see *Jesinoski, Id*.

16. The rescission of the transaction was effective by operation of law pursuant to Plaintiff's timely mailing of the "NOTICE OF RESCISSION OF LOAN UNDER REG. Z AND 12 CFR 226.23, and the Truth in Lending Act ("TILA") 15 U.S.C. § 1635 *et seq*." on July 13, 2007 (See Exhibit "2" incorporated herein by this reference along with its Proof of Service herein designated the "Rescission") to AWL, 1455 Frazee Road #102, San Diego, CA 92108, the address provided in the DOT for AWL as the statutorily defined creditor.

**There is no Requirement for the Rescission to Include the Discrepancies or Basis for its Notice**

17. Plaintiff responds as follows to the Court's question and misplaced agreement with MERS during the previous hearing on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Transcript Doc 80 "Transcript" pg. 14:5-18), whether or not there was or is any case-law requiring that the Rescission state the basis for, or the discrepancies alleged, in order to determine whether or not the 3-day unconditional or the extended 3-year conditional statute of repose applied. Notwithstanding that MERS has no standing to challenge the Rescission depriving the court of subject matter jurisdiction (because MERS neither was, nor is, the statutorily defined or admittedly any other form of creditor); there is no applicable case-law available on this issue and none necessary. The plain language in *Jesinoski* is clear and unambiguous ... there is no such requirement. As stated by the late Justice Scalia for the unanimous U.S. Supreme Court, "in unequivocal terms" the right to rescind is exercised simply "*by notifying the creditor...of his intention to do so.*" (Emphasis in original.) "[I]t follows that, so long as the borrower notifies within three years after the transaction is consummated, the rescission is timely;" Justice Scalia further stated that this language "leaves no doubt that the rescission is effected when the borrower notifies the creditor of his

intention to rescind." (*Jesinoski*, *Id*. at 792.) The U.S. Supreme Court has ruled, nothing more is required.

**Neither AWL nor any Defendant to this Action ever Loaned Plaintiff Anything**

18. The Court's reference to Plaintiff's failure to deny "that she never received the $544,000" in 2:19-20 of its ORDER GRANTING MOTIONS TO DISMISS (Doc. 91 "MTD Order"), and inference that merely because a "loan" was somehow consummated, Plaintiff owes someone whether identified or not, is another misplaced presumption. Notwithstanding that the purported debt was discharged as unsecured in Plaintiff's bankruptcy after being deemed unsecured pursuant to the Rescission; whether Plaintiff received the "loan" or not, regardless of how much was funded at closing, "the $544,000" was: (a) "never received" by Plaintiff but credited to primarily refinance a previous loan; and (b) the funding was never provided by AWL the purported "Lender" or any defendant to this action. As stated by Justice Werdegar for the unanimous Cal. Sup. Court in *Yvanova v. New Century Mortg. Corp*., 2016 Cal. LEXIS 956 (Cal. Feb. 18, 2016) ("*Yvanova*"):

> " The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security." *Yvanova, Id*. at 33

19. There is no particular person, entity or institution as a defendant or named in this instant action entitled to payment for a debt rendered unsecured pursuant to TILA in 2007, discharged in Plaintiff's Ch. 7 bankruptcy in 2012 and the Rescission deemed effective by operation of law once the claim acrrued pursuant to Jesinoski in 2015. The actual lender who credited the funds at closing of the transaction has never been disclosed but it was not AWL because AWL did not exist as either a person or a corporation as claimed in the purported DOT nor was it any other defendant to this action. This means there was never been a legally or contractually authorized mortgagee prior to or after consummation of the transaction and certainly not after the transaction was subsequently rescinded and debt discharged as unsecured in Plaintiff's bankruptcy.

"It is no mere 'procedural nicety,' from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, *supra*, 63 Duke L.J. at p. 650.) 'Such a view fundamentally misunderstands the mortgage contract. The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan. Instead, it is an agreement that if the homeowner defaults on the loan, *the mortgagee* may sell the property pursuant to the requisite legal procedure.' (*Ibid*., italics added and omitted.)" *Yvanova, Id*. at 33-34.

**The Statutory Creditor's Failure to Comply with 15 U.S.C. § 1635(b)**

20. AWL as the statutorily defined creditor pursuant to 15 U.S.C. § 1602(g), failed to comply with its duties under 15 U.S.C. § 1635(b) within 20 days after receipt of the Rescission. Neither did AWL challenge Plaintiff's Rescission within that statutory deadline. Any such challenge was thereby waived because **the deadline is statutory** and **AWL's duties as the statutorily defined creditor were mandatory** within that deadline. In failing to comply with its duties under 15 U.S.C. § 1635(b) or oppose Plaintiff's Rescission within the 20 day deadline, AWL tacitly acknowledged the Rescission's validity. AWL as the creditor, by its inaction and statutory duty to speak and act, gave up any right to oppose the Rescission subsequent to the 20-day deadline pursuant to the doctrines of Estoppel by Silence and Estoppel by Acquiescence (see e.g. *Headlands Reserve v. Ctr. for Natural Lands Mgmt*. (2007) 523 F.Supp.2d 1113-1130-1131; *Spray, Gould & Bowers v. Associated Int'l Ins. Co.* (1999) 71 Cal. App.4th 1260). AWL acquiesced to the rescission by failing to respond within the 20-day response deadline, period. Therefore Plaintiff's Rescission was accomplished automatically (*Yamamoto v. Bank of N.Y*. (9th Cir. Haw. 2009) 329 F.3d 1167, 1172) [when the purported creditor acquiesced in the notice of rescission, then the transaction is rescinded automatically].

21. As an undisputed rescission, any authority for the court to modify the default sequence of events pursuant to 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(4), ended once the rescission was accomplished (see *Causey v. U.S. Bank, N.A.* (9th Cir. Cal. 2011) 464 Fed. Appx. 634, 635. Plaintiff's Rescission in 2007 was deemed *unequivocally* effective by operation of law (see *Jesinoski, Id*.) when noticed in 2007 and Plaintiff's claim for relief thereon accrued pursuant to *Jesinoski* in 2015.

**Plaintiff's Bankruptcy**

22. Plaintiff filed for Chapter 7 Bankruptcy protection on November 12, 2010 scheduling the subject Property and the purported debt as unsecured, nonpriority, contingent, unliquidated and disputed stating therein, that if the purported debt was proven to exist at all, it was unsecured and subject to discharge (see Schedules A and F, N. Dist. CA. Case No. 5:10-bk-61716). Plaintiff also filed an Adversary Proceeding seeking the court's adjudication of the secured status of the purported security (on different grounds than the TILA Rescission; alleged against different parties to this action other than MERS) which was never litigated on the merits but dismissed by the bankruptcy court for the lack of subject matter jurisdiction, ruling that the Chapter 7 trustee was the only person with standing to pursue Plaintiff's claims at that relevant time. Plaintiff's claims were specifically alleged as Declaratory Relief (1) to Determine the Validity, Extent and Interest in Real Property; (2) to Determine the Dischargeability of Alleged Lien and Associated Debt; (3) to Disallow Secured Claim and Cancel Instrument (the DOT); (4) for Injunctive Relief to Stop Foreclosure Action for fraudulently naming the "Lender" in the DOT that did not exist; and (5) to Quiet Title for defendants therein named, and all persons known or unknown with claims adverse to Plaintiff's as determined by the Court. The court ruled that due to the lack of a written abandonment of the Property to the Plaintiff during the pendency of her Bankruptcy, only the Ch. 7 Trustee had standing to pursue Plaintiff's claims. The Trustee never refused to abandon the property during the bankruptcy which Plaintiff sought, however both the Trustee and bankruptcy failed to respond to Plaintiff's properly drafted written request to abandon [11 U.S.C. § 554(b)] prior to hearing Plaintiff's adversary complaint. Notwithstanding the foregoing, Judge Novack ruled:

> " ...**[T]his Court does not have** -- or does not intend to exercise **subject matter jurisdiction over these claims**." "I have jurisdiction over claims that arise in, arise under, or are related to the bankruptcy case. These claims at issue do not satisfy any of these standards. **These claims do not arise in the bankruptcy case** because they are not administrative matters unique to the Bankruptcy Code that have no independent existence outside of bankruptcy. So they don't arise in the case. These claims do not arise under the Bankruptcy Code because they are not claims created by the Bankruptcy Code. Instead, they are claims originating in non-bankruptcy law, so they don't arise under.

Finally, **these claims are not related to the case** because this is a no-asset case as stated by the trustee and not related in any way to the administration of this case. **Once these claims are abandoned, the Debtor can go about her life without any further supervision by the Bankruptcy Court** and I therefore intend to deny the motion." (Emphasis added)

23. When directly asked by the Court during the hearing held on October 21, 2015, David E. Pinch of Severson & Werson ("Pinch" or "Pinch's") as MERS' purported counsel, stated that there was a proof of claim filed in Plaintiff's Bankruptcy (see Transcript 5:21-23; 5:24-6:1; and 6:2-3). This statement was absolutely untrue and intentionally misleading. The fact is, **there was *never* a proof of claim filed by anyone in Plaintiff's Bankruptcy**. This means there was no objection or opposition to the purported "debt" being listed as unsecured and tacit acknowledgement by all "creditors" that there was no secured "claim" to, or "lien" on, Plaintiff's Property (the term "creditors" means the term as it is used and defined for bankruptcy purposes only). The term "creditor(s)" for the purposes of bankruptcy would include the named Defendants to this instant action because each Defendant hereto, claims some form of creditor successor status as the term is used *only* for bankruptcy purposes but as statutorily and specifically defined for the purposes of TILA which would only be AWL. In further support of the unsecured status of the purported debt, Pinch also admitted before this Court that a proof of claim was required in order to challenge the purported debt's unsecured status of such debt (see Transcript 5:14-18) thereby admitting that MERS has no right to challenge to the unsecured status of the purported debt even though as stated herein, MERS lacks standing to challenge the Rescission because it was never the statutory creditor pursuant to TILA.

24. A General Rule of Pleading [Fed. R. Civ. P., Rule 8(a)(6)] and the maxim of *admission by acquiescence* dictates that the failure to deny an allegation is thereby admitted by such failure. During the Bankruptcy and related adversary proceeding, no purported bankruptcy creditor or anyone else took any steps whatsoever to challenge the unsecured status of the purported debt as scheduled. In fact, the defendants named in the bankruptcy adversary complaint, including MERS, opposed Plaintiff's attempt at every bend and turn, to obtain a determination of the secured status of the purported "debt."

> " One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' *Williams v. U.S. Fidelity & G. Co*. (1915) 236 U.S. 549, 554-555. This purpose of the act has been again and again emphasized by the courts ...that it gives to the honest but unfortunate debtor ...a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt" (internal citations omitted). *Local Loan Co. v. Hunt* (U.S. 1934) 292 U.S. 234

25. Upon closing the bankruptcy case, Plaintiff's Property was deemed abandoned back to Plaintiff pursuant to 11 U.S.C. 554(c). Accordingly, Plaintiff's unsecured debts including any purported debt related to the subject Property were discharged once the case was closed in January 2012. This is to further clarify the Court's failure to understand how repayment of the purported "debt" was not required as the Court questioned during the previous Motion to Dismiss hearing (see Transcript 13:23-14:2). Any purported debt the subject of the refinance transaction was deemed unsecured and void by operation of law pursuant to the Rescission in 2007 and therefore was no different than credit card or any other form of unsecured debt authorized to be discharged in Bankruptcy.

**Defendants Lack Standing to Challenge Plaintiff's Rescission because no Defendant before this Court is or ever was, the Statutory Creditor under TILA**

26. Defendants and each one, lacks standing to oppose Plaintiff's Rescission because standing to oppose Plaintiff's Rescission under TILA was *only* available to AWL as the statutorily defined creditor which is defined in § 1602(g) as "***only*** ... a person who ... regularly extends credit ... [and] is **the person to whom the debt...is *initially payable on the face of the evidence of indebtedness*** " (emphasis added). Because the subject purported Note is the alleged "evidence of indebtedness" and the Note named AWL as the "Lender," ***only*** AWL was the statutorily defined creditor and was ***required*** to comply with its statutorily defined duties in § 1635(b) which AWL failed to do. If AWL had any opposition to the Rescission, it was required to do so within the statutory 20-day deadline and never did. The TILA Rescission was effective by operation of law in 2007 and cannot be simply ignored even if Plaintiff's right to assert it did not accrue until 2015 pursuant to *Jesinoski*. There was no opposition by the statutory deadline and there can be no opposition now.

(a) When Plaintiff timely exercised her right to rescind under 15 U.S.C. § 1635(a), she was:

" ...not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law" (meaning the DOT) became "void upon such a rescission" [15 U.S.C. § 1635(b)]; and

(b) Within 20 days after receipt of the Rescission, AWL was required ("shall") and failed to:

" ...return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it [15 U.S.C. §1635(b)].

**Failure to Comply with Conditions Precedent - Defendants Lack Prudential Standing to Challenge the Rescission**

27. Each Defendant is attempting to challenge Plaintiff's Rescission without AWL having complied with conditions precedent required by 15 U.S.C. § 1635(b). Each Defendant lacks Prudential Standing under the Constitution to do so, since each is attempting to assert the rights only available to, and waived, by AWL who was the _only_ statutorily defined creditor pursuant to 15 U.S.C. § 1602(g). Defendants' claim that only the Bankruptcy Chapter 7 Trustee has standing to allege a cause of action for the TILA Rescission is unmeritorious because **_the TILA "cause of action" or claim for relief, did not accrue pre-petition and is a remedy, not a cause of action_** (see ¶¶ 5- 8 herein above.) The *Prudential Standing Rule* bars litigants from asserting rights or legal interests of others (*Warth v. Seldin* (1975) 422 U.S. 490, 499). Defendants' attempts to assert the rights only available to AWL defensively as a bar to judgment against them is not allowed (*e.g.*, *Barrows v. Jackson* (1953) 346 U.S. 249; *McGowan v. Maryland* (1961) 366 U.S. 420, 429-430).

**Defendants' [other] Constitutional Violations**

28. Defendants, in an ongoing conspiracy with each other (see 42 U.S.C. § 1985) and using attorneys as officers of the Court and the Court itself under the color of State Law (Calif. Civ. Code §§ 2920 *et seq*.) are attempting to enforce State Laws abridging the rights, privileges of and subjecting Plaintiff as a Citizen of the United States, to the deprivation of Plaintiff's rights, privileges and her Property protected under TILA and Reg. Z as laws of the United States, thereby denying Plaintiff her right to due process and equal protection under the 5th and 14th Amendments of the U.S. Constitution and Article 1 Sec. 7 of California's Constitution. As will be further addressed herein

below, 42 U.S.C. § 1983 provides a private remedy for violations of Federal law, and has

subsequently been interpreted to create a species of tort liability as alleged against Defendants (See

*Memphis Community School Dist. v. Stachura* (1986) 477 U.S. 299, 305).

**Instruments Recorded and Rescinded - Dismissal of State Action and Appeal of the Adversary Proceeding**

29.     In or about March 2010, Recontrust Company, N.A. ("Recon") requested the recording of

and recorded a NOTICE OF TRUSTEE'S SALE signed by one "Kristina Madrigal, Team Member" for

Recon.  This false instrument was wrongfully recorded in an attempt to continue attempts to

foreclosure on Plaintiff's Property subsequent to Plaintiff's bankruptcy discharge and closing of the

case in violation of the discharge injunction.  Accordingly, Plaintiff was forced to file a lawsuit

against the parties involved, in or about May 2012 as Superior Court of California County of Santa

Cruz Case No. CV 174201.  After the Court overruled defendants' demurrers placing the case at

issue, a trial date was set.  However, while discovery was being conducted, Plaintiff voluntarily

dismissed the case without prejudice on or about January 24, 2014 because on January 23, 2014,

Recon requested the recording of and recorded the NOTICE OF RESCISSION OF DECLARATION OF

DEFAULT AND DEMAND FOR SALE AND OF NOTICE OF DEFAULT AND ELECTION TO SELL as Doc. No.

2014-0002378, which was purportedly signed by one Georgia Hernandez, Assistant Vice President of

Recon "AS TRUSTEE FOR THE BENEFICARY" effectively ending the attempts to foreclose on Plaintiff's

Property.  Accordingly, Plaintiff not only dismissed her State case but her appeal of Judge Novack's

adversary proceeding ruling on or about January 26, 2014.

**RECORDED INSTRUMENTS CLOUDING AND DISPARAGING THE TITLE TO PLAINTIFF'S PROPERTY**

**The Purported DOT**

30.     The DOT the subject of this action as further described in ¶ 10 herein above was

recorded at the request of First American Title Company and prepared by Debra Gurrola.  The DOT

was void by operation of law pursuant to the Rescission described in ¶ 16 and evidenced by Ex. "2"

attached hereto.

**MERS' Substitution and Assignment**

31. The SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST dated November 13, 2009; was recorded on December 7, 2009 as document number 2009-0056700 ("SOT & Assignment") was requested to be recorded by RECONTRUST COMPANY, **signed by** one Abraham Bartamian, Assistant Secretary, for **MERS in its own right** as the "Beneficiary of" the DOT, not "acting solely as a nominee for Lender and Lender's successors and assigns" as stated in (E) of the DOT. The SOT & Assignment was notarized on November 27, 2009 by one Janet L. Koch.

32. Although appearing valid on its face, the SOT & Assignment was *ultra vires*, invalid and void, and a wrongfully recorded false instrument, because: (a) neither AWL as the purported original "Lender," BONYMCorp as the purported assignee (which it was not, for the reasons stated herein), nor MERS, had any authority to instruct ORNTIC as the purported trustee (which it was not) to commence foreclosing on Plaintiff's Property; and (b) the purported DOT relied on for MERS authority to record the SOT & Assignment which was and remains necessary to the chain of title for ORNTIC or NewPenn to foreclose on Plaintiff's Property, was absolutely void by operation of law pursuant to the Rescission and of no legal force or effect whatsoever, MERS' lack of authority notwithstanding:

> "...[O]nly the entity holding the beneficial interest under the deed of trust--the original lender, its assignee, or an agent of one of these--may instruct the trustee to commence and complete a nonjudicial foreclosure. (§ 2924, subd. (a)(1); *Barrionuevo v. Chase Bank, N.A.*, *supra*, 885 F. Supp. 2d at p. 972.) If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever (*Colby v. Title Ins. and Trust Co.*, *supra*, 160 Cal. at p. 644; Rest.2d Contracts, § 7, com. a), the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure. (*Barrionuevo v. Chase Bank, N.A.*, at pp. 973-974.)" *Yvanova v. New Century Mortg. Corp. et al*. (Cal. Feb. 18, 2016) 2016 Cal. LEXIS 956, *28

Because AWL was not a MERS Member as revealed by a search of MERS' membership online search feature (https://www.mersinc.org/about-us/member-search) there was no "nominee" or "beneficiary" status contractually or legally authorized by the DOT for MERS to record the SOT & Assignment, the previous Rescission of the DOT notwithstanding, because:

> Only a MERS' "...member lender may name MERS as mortgagee on a loan the member originates or owns; MERS acts solely as the lender's 'nominee,' having legal title but no beneficial interest in the loan" (*Yvanova, Id*. citing *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282 ("*Culhane*"), *20.)

Further, there is no evidence that the purported Note was indorsed or the DOT was assigned to MERS authorizing MERS to record the SOT & Assignment in its own right, rather than as nominee for anyone, as it did, evidenced by the signature of Abraham Bartamian specifically for MERS as its Assistant Secretary and not in a representative or nominee capacity MERS may have had (which as specified herein, it did not.) MERS falsely claimed it had authority to record the SOT & Assignment in 2009. Notwithstanding MERS' lack of authority, the SOT & Assignment was absolutely void pursuant to the Rescission in 2007 the assertion for which accrued pursuant to *Jesinoski* in 2015. However, the SOT & Assignment remains on the record clouding, slandering and disparaging the title to the title to Plaintiff's Property.

**Notice of Default No. 1**

33. The "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST" dated October 21, 2014 and recorded on October 28, 2014 as document number 2014-0036155 ("NOD 1") although appearing valid on its face, was *ultra vires* and an invalid and void wrongfully recorded false instrument because nothing stated therein was applicable or true since the subject DOT relied on for its authority was void by operation of law pursuant to the Rescission. NOD 1 was recorded prior to the "CALIFORNIA AUTHORIZATION TO PROCEED (CIV. CODE §§ 2923.6 and 2924.11)." This document provided evidence that NewPenn failed to timely comply with Cal. Civ. Code. §§ 2923.6(a) *et seq*. or (b) [Plaintiff was never offered a "loan modification or workout plan" pursuant to § 2923.6(b)]. Cal. Civ. Code § 2924.11 was not applicable because of NewPenn's failure to comply with § 2923.6(b). NewPenn was notified on December 17, 2014, of its failure to comply yet proceeded to subsequently record the additional wrongfully recorded false instruments identified herein below in violation of, Cal. Civ. Code § 2924.17 *et seq*. because the declaration pursuant to § 2923.55 was inaccurate, incomplete and not supported by competent and reliable evidence.

**Substitution of Trustee No. 2**

34.    The "SUBSTITUTION OF TRUSTEE" dated October 7, 2014 was recorded on October 28, 2014 as document number 2014-0036154 ("SOT 2").  Although appearing valid on its face SOT 2 was *ultra vires*, invalid, void, and a wrongfully recorded false instrument because the DOT relied on was void by operation of law pursuant to the Rescission.

**Notice of Default No. 2**

35.    The "NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST" dated December 18, 2014 was recorded on December 19, 2014 as document number 2014-0043352 ("NOD 2").  Although appearing valid on its face this DOT was *ultra vires,* invalid, void, and a wrongfully recorded false instrument because the DOT relied on for its authority was void by operation of law pursuant to the Rescission.

**Substitution of Trustee No. 3**

36.    The SUBSTITUTION OF TRUSTEE dated December 10, 2014 was recorded on December 19, 2014 as document number 2014-0043351 ("SOT 3").  Although appearing valid on its face SOT 3 was *ultra vires,* invalid, void, and a wrongfully recorded false instrument because the subject DOT relied on for its authority was void by operation of law pursuant to the Rescission.

**NOTICE OF TRUSTEE'S SALE**

37.    The NOTICE OF TRUSTEE'S SALE is undated but was recorded on April 30, 2015 as document number 2015-0016503 ("NOTS").  Although appearing valid on its face the NOTS was *ultra vires*, invalid, void, and a wrongfully recorded false instrument because the DOT relied on for its authority was void by operation of law pursuant to the Rescission.

**Plaintiff's Attempts to Settle This Dispute Informally Failed - Defendants Forced this Lawsuit**

38.    Starting in or about October 2014, the Defendants in this instant action recorded or caused to be recorded, the instruments identified herein, attempting to collect the purported "debt" by foreclosing on Plaintiff's Property claiming their authority pursuant to the DOT.  Because the TILA Rescission was determined to be effective in July 2007 with Plaintiff's ability to assert it accruing pursuant to *Jesinoski* in 2015; on Plaintiff's behalf, her counsel, Ronald H. Freshman, notified ORNTIC C/O Lisa G Garcia, 275 Battery St., Suite 1500, San Francisco, CA 94111; NewPenn at

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 18 of 102

55 Beattie Place, Suit4 110, Mail Stop 005, Greenville, SC 29601; Old Republic Default Management Services P.O. Box 250, Orange, CA 92856-6250 ("ORDMS"); and Old Republic Diversified Services, Inc. C/O Registered Agent Solutions, Inc. ("ORDSI") by mail in an attempt to resolve the disputes complained of herein, informally by communicating with Defendants and their attorneys providing, *inter alia*, a copy of the Rescission and the DOT along with an explanation that as determined by the U.S. Supreme Court in *Jesinoski* the rescission was effective by operation of law and all recorded instruments subsequently recorded were likewise void as a matter of law. Plaintiff's demands that Defendants cease and desist their collection activities and rescind the wrongfully recorded false instruments identified herein were ignored and all attempts at informal resolution to Defendants wrongful acts and claims failed. The written correspondences by mail were dated: December 17, 2014; January 7, 12, 14 and 22, 2015; February 6, 11 and 13; March 20 and 27 with email fax correspondence dated February 20, received from one David M. Liu another attorney for Severson & Werson claiming to represent ORNTIC, ORDMS and ORDSI and responded to by Plaintiff's Attorney on February 27, 2015. Because the correspondences were ineffective in resolving this dispute Plaintiff was forced to file this lawsuit to assert her legal rights.

## II. STATEMENT OF JURISDICTION, VENUE AND PARTIES

[Fed. R. Civ. P., Rules 8(a)(1), 9(a)(1) *et seq*. and L.R. 3-5(a)]

**JURISDICTION**

39. This Court has jurisdiction over this case because the parties are citizens of different States, the amount in controversy exceeds $75,000.00, and Federal questions have been raised in this SAC. However, Defendants lack standing as a TILA statutory defined creditor and Prudential standing as stated elsewhere herein, thereby depriving the Court of subject matter jurisdiction to hear or rule on the Rescission itself which was and remains effective by operation of law as of July 2007 pursuant to TILA, Reg. Z, accruing as a claim for relief in 2015 pursuant to *Jesinoski*.

**Diversity of Parties' Citizenship**

(a) Pursuant to United States Code ("U.S.C.") Title 28 § 1332(a)(1), diversity jurisdiction applies because the matters in controversy are among citizens of different States.

**Amount in Controversy**

(b) Pursuant to 28 U.S.C. § 1332(a), it is undisputed that the matter in controversy exceeds the statutory sum or value of $75,000.00 exclusive of interests and costs. Pursuant to the NOTS, Defendants claim Plaintiff owes $692,994.86 "... to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust..."

**Federal Questions**

(c) The Federal questions alleged herein conferring Federal Question Jurisdiction include *inter alia*, that pursuant to 28 U.S.C. §§ 1331 and 1334 *et seq*., this civil action arises under the Federal Truth in Lending Act 15 U.S.C. §§ 1601-1635 *et seq*.; Regulation Z, 12 C.F.R. § 226.23 *et seq*.; 15 U.S.C. § 1692 *et seq*.; 11 U.S.C. § 524 *et seq*.; the Declaratory Judgment Act 28 U.S.C. § 2201 *et seq*. and 42 U.S.C. §§ 1983 and 1988 which are laws of the United States and Federal questions providing original jurisdiction over this proceeding.

**Supplemental Jurisdiction over State-Law Claims**

(d) The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

**VENUE**

40. This Court is the proper venue for this action pursuant to 28 U.S.C. §§ 1391(a) *et seq*. and (b)(2) because the Property the subject of this action is situated in the County of Santa Cruz which is within the designated Northern District of California.

**PARTIES - Plaintiff, Defendants and Non-Parties**

**Plaintiff**

41. Plaintiff is currently a citizen of the State of Nevada but at all other times relevant herein, a resident of the State of California, County of Santa Cruz, and the owner in fee simple of the subject property commonly known as 131 Sutphen St., Santa Cruz, CA 95060 ("Property") which at the relevant times herein, was owner-occupied and Plaintiff's principal residence. The Property currently remains partially owner-occupied and is Plaintiff's sole-owned and therefore primary property.

**Defendants and Non-Parties**

**Defendant ORNTIC**

42. Plaintiff is informed and believes, and thereon alleges, that defendant ORNTIC is a citizen of the State of Minnesota being shown in the Calif. Sec. of State's official Website as: Entity Number C0406676; Status: ACTIVE; Jurisdiction: MINNESOTA; Entity Address 400 SECOND AVE S, MINNEAPOLIS MN 55401; with an Agent for Service of Process named LISA G GARCIA at 275 BATTERY ST., SUITE 1500, SAN FRANCISCO CA 94111. ORNTIC has been served the Summons, original and First Amended Complaints but has failed to appear in this Action and therefore in default. Although a request for entry of default was filed (Doc. 49 filed August 20, 2015), for no apparent reason, the "Case Systems Administrator" Sandy Morris Clerk declined to enter ORNTIC's Default signing for Richard W. Wieking Clerk of Court (Doc. 62 filed September 1, 2015).

**Non-Party "OLD REPUBLIC DEFAULT MANAGEMENT SERVICES"**

43. Attorney John C. Steele ("Steele") from the Law Office of Les Zieve in Irvine California avers to have been substituted for David M. Liu of Severson & Werson in Irvine California ("Liu"). Steele claims to represent and to have been substituted in by "OLD REPUBLIC DEFAULT MANAGEMENT SERVICES, a division of Old Republic National Title Company" ("ORDMS") pursuant to his filed "SUBSTITUTION OF ATTORNEY" (Doc 69 filed September 14, 2015 "SOA"). Steele further claims ORDMS was erroneously sued as ORNTIC which is untrue, *inter alia,* based on the following facts:

(a) ORNTIC is the existing party that Plaintiff has *specifically* named, sued and served the Summons and complaints upon; whereas ORDMS is a fictitious business and a non-existent entity because:

(1) ORDMS is not listed on the California Secretary of State official website as either a Corporation or Limited Liability Company;

(2) There is no evidence that ORDMS is a registered fictitious business name for ORNTIC or any other company as evidenced by the Orange County Clerk-Recorder's official website which states "No Records Found" for any derivative of "old republic"; and

(3) An online search reveals that ORDMS, its lack of existence notwithstanding, changed its name to Old Republic Servicing Solutions, a division of Old Republic

Diversified Services, Inc. (e.g. http://themreport.com/news/servicing/07-30-2015/old-republic-default-changes-its-name-to-servicing; also see www.orservicingsolutions.com) in or about July 2015 and it too claimed, as published online, to be a division of Old Republic Diversified Services, Inc. not "Old Republic National Title Company" which is another company that does not exist, as untruthfully claimed by Steele in his SOA.

44.   Therefore, for the reasons and on the information stated herein above, Plaintiff believes and thereon alleges that ORNTIC, the party Plaintiff specifically sued, has: (a) not made an appearance in this Action; (b) has defaulted; and (c) that Steele has brought fraud upon this Court by claiming to represent a party that does not exist and was not named or sued by Plaintiff.

45.   Upon information and belief, Plaintiff alleges that Steele has no legal services agreement with or signed by ORNTIC in violation, a violation of, *inter alia*: (a) Fed. R. Civ. P., Rule 11(b) *et seq*.; (b) L.R. 11-6(a) *et seq*.; (c) Calif. R. of Prof. Conduct, Rules 3-110 *et seq*., 3-200 *et seq*., 3-310 *et seq*., 3-600 *et seq*., 3-700 *et seq*.; and (d) Cal. Bus. & Prof. Code §§ 6068 *et seq*., 6104, 6106, 6128 and 6148 *et seq*. Steele's misrepresentations before this Court include his failure to correct or deny the misrepresentations he has made in, and continues to rely on, including, *inter alia*: the filed Certificate of Interested Parties (Doc 34); and (b) Motion to Dismiss,  Request for Judicial Notice and Opposition to Default (Docs. 35, 36 and 55 respectively); and by Steele presenting to the court by filing, the: (c) Substitution of Counsel (Doc 69); (d) Reply in Support of Motion to Dismiss (Doc 70); and (e) as represented during the hearing before this Court by an unknown "Mr. Davis" claiming to be "For Defendant Old Republic" (see Doc 80 pgs. 23:8-28:19) which is not a named party to this action either.

46.   On the aforementioned information Plaintiff believes and thereon alleges that neither Steele, nor Mr. Davis has and cannot have, a legal services agreement with ORNTIC or the party each claims because (a) ORDMS does exist and (b) ORDMS is not the party Plaintiff has sued.

**Defendant NewPenn**

47.   According to the California Secretary of State's official website, defendant NewPenn is a citizen of the State of Pennsylvania but was not registered until July 16, 2008. Plaintiff has not sued "ShellPoint Mortgage Servicing" or any derivative of that name because such is merely a fictitious business name for New Penn Financial, LLC.

**Defendant BONYMCorp**

48. According to the California Secretary of State's official website defendant BONYMCorp is not registered as a corporation in California. However, according to the New York Department of State Division of Corporations and The State of Delaware official websites, BONYMCorp is a Domestic Delaware Corporation and a citizen of the State of New York (also see e.g. http://www.sec.gov/Archives/edgar/data/1078020/000119312510148602/ds3asr.htm). Plaintiff contends however, that pursuant to representations by BONYMCorp's purported law firm Yu Mohandesi LLP and its attorney Thuy N. Tran ("Tran"); and additionally in the recorded instruments identified herein; although Plaintiff has served the Summons and FAC on BONYMCorp through its agent for service of process indicated in the Delaware Division of Corporations official website, the entity sued by Plaintiff is not represented in this Action and has not made an appearance in this action as of the date of filing. Although a request for entry of default was filed (Doc. 60 filed August 26, 2015), for no apparent reason, the "Case Systems Administrator" Sandy Morris Clerk declined to enter BONYMCorp's Default signing for Richard W. Wieking Clerk of Court (Doc. 62 filed September 1, 2015).

49. On this information and belief Plaintiff alleges that Tran has brought fraud upon this Court by claiming to represent a party that does not exist, was not sued by Plaintiff, and further alleges that Tran has no legal services agreement with BONYMCorp while claiming to represent them, a violation of, *inter alia*, (a) Fed. R. Civ. P.; (b) Rule 11(b) *et seq.*, L.R. 11-6(a) *et seq.*; (c) Calif. R. of Prof. Conduct, Rules 3-110 *et seq.*, 3-200 *et seq.*, 3-600 *et seq.*; and (d) Cal. Bus. & Prof. Code §§ 6068 *et seq.*, 6104, 6106, 6128 and 6148 *et seq*. as misrepresented before this Court by Tran presenting the: (a) Waiver of Service of Summons (Doc 25); (b) Certification of Interseted [sic] Entities (Doc 32); (c) Motions to Dismiss (Doc 53) and Reply to the Opposition (Doc 68); and (d) as represented during the hearing before this Court (also see Doc 80 pgs. 3:18, 19:1-2, 20:3-7 and 28:20-29:17). Plaintiff is further informed and believes and thereon alleges that YMLLP and Tran have, and cannot have, a legal services agreement with parties that do not exist as further explained herein.

**Non-Party "The Bank of New York Mellon"**

50. Plaintiff is informed and believes and thereon alleges, based *inter alia*, on the public information available online at (http://www.federalreserve.gov/pubs/bulletin/2007/legal/q207/order2.htm) that "The Bank of New York Mellon" (claimed by Defendants to be the "Trustee for the Certificateholders of CWMBS Inc- CHL Mortgage Pass-Through Trust 2005-02") ("BONYM") does not exist as named and the party Tran specifically claims to represent in this action pursuant to, *inter alia*, YMLLP and Trans' "DEFENDANTS' CERTIFICATION OF INTERSETED [sic] ENTITIES OR PERSONS PURSUANT TO LOCAL RULE 3-15" filed as Doc. No. 32 ("CIE"). Contrary to footnote 1 in the CIE, Plaintiff has not "erroneously sued" "The Bank of New York Mellon Corporation as Trustee for the Certificateholders of CWMBS, Inc. - CHL Mortgage Pass-Through Trust 2005-02." The only identifiable existing entity with any derivative of The Bank of New York Mellon's name is BONYMCorp the entity sued herein. It is not up to Tran to designate who the party is that Plaintiff has sued while untruthfully claiming to represent another party that does not even exist. Plaintiff is informed, believes and thereon alleges that neither YMLLP nor Tran has any form of legal services agreement with BONYM since there is no entity existing by that name; or with BONYMCorp, the actual existing party to this action plaintiff has sued.

**Non-Party "The Bank of New York Mellon fka The Bank of New York as Trustee..."**

51. Pursuant to New York and Delaware's respective official Department of Corporations' websites, contrary to Tran's claims in the CIE, "The Bank of New York Mellon fka The Bank of New York as Trustee for The Certificate Holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-02 Mortgage Pass-Through Certificates, Series 2005-02" ("BONYMTrustee") is not, and cannot, due to its lack of existence, be "a wholly owned subsidiary of The Bank of New York Mellon Corporation."

(a) The Bank of New York Mellon" does not exist and never has (see ¶ 50 herein above); "The Bank of New York" does not exist and never has (see ¶ 53 herein below); and

(b) A series of certificates by its very nature is not a party, let alone a real party in interest pursuant to Fed. R. Civ. P. Rule 17(a) *et seq.*; and lacks capacity pursuant to Fed. R. Civ. P. Rule 17(b) *et seq*. (is not an individual, corporation, LLC, partnership or other unincorporated association and incompetent as an entity, trust or trustee.)

52. There have been a multitude of misrepresentations in the recorded instruments and by defense counsel in filed papers and correspondence with Plaintiff's Counsel claiming to represent BONYMCorp with no less than 9 different names averred for BONYMCorp, BONYM and BONY purportedly BONYMCorp's or BONYM's predecessor who each as named, never existed. Defendants and their counsel are attempting to obfuscate any ability to identify any actual owner, holder or holder-in-due-course of the purported debt, if such ever existed, its extinguishment notwithstanding.

**Non-Party "THE BANK OF NEW YORK"**

53. Plaintiff is informed and believes and thereon alleges that "THE BANK OF NEW YORK" ("BONY"), the entity claimed in the SOT & ASSIGNMENT and 2:9 of Tran's CIE, is a fiction and sham. Neither Delaware nor the New York Departments of Corporations show BONY has ever existed as named in the recorded instruments or as claimed by Tran. The only existing entity with a derivative of that name is shown as "The Bank of New York Company, Inc." not "The Bank of New York."

**Non-Party "CHL Mortgage Pass-Through Trust 2005-02"**

54. Notwithstanding that the purported trustee must be named as the party to an action when a trust is involved, there is no registration in either Delaware, New York, or with the Internal Revenue Service for "CHL MORTGAGE PASS-THROUGH TRUST 2005-02" ("CHL") and as a claimed Delaware Statutory Trust in documents listed with the Securities and Exchange Commission, CHL was required to be registered with the Delaware Secretary of State (See Del. Code Title 12 § 3810) and no such registration exists pursuant to the State of Delaware's official website. Neither is there is a registration for CHL with the IRS as a REMIC Trust pursuant to any IRS Form 938 publically available online through the IRS at: https://apps.irs.gov/app/picklist/list/priorFormPublication.html;jsessionid=zKqzRCseyRwur8mM-41n2w ?value=938&criteria=formNumber&submitSearch=Find and the respective Publ 938 as applicable, which lists every REMIC Trust registered with the IRS. If not registered with the IRS and even if registered and no tax returns were filed or other requirements complied with, said Trust has no REMIC status and as a result, does not exist as a matter of law. Plaintiff is thereby informed and believes and thereon alleges, *inter alia*, that the purported "Trust" which Defendants along with their purported attorneys, claim owns Plaintiff's "loan" and they claim BONYM is the purported

trustee for, is a fiction (the Rescission of the “loan;” lack of the existence of BONYM and BONY; and denial by BONYMCorp to own any such “loan” notwithstanding.) It should also be noted that pursuant to an email correspondence requested by Plaintiff’s counsel a response which was received on May 4, 2015 from one alissa.reatz@bnymellon.com on behalf of MBS.Property.Inquiries@BNYMellon.com, BONYMCorp denied any ownership interest in the purported “loan” its Rescission and discharge notwithstanding.

**Defendant MERS**

55. PLAINTIFF is informed and believes, and thereon alleges, that according to the Calif. Sec. of State’s official website, defendant MERS is currently a citizen of the State of Virginia.

## III. STATEMENT OF ENTITLEMENT TO RELIEF

[Fed. R. Civ. P., Rule 8(a)(2)]

56. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

57. Plaintiff is entitled to declaratory and injunctive relief pursuant to a recordable Court judgment ordering the cancellation of the instruments as requested herein because:

(a) Plaintiff holds title to the subject Property superior to all others pursuant to the Grant Deed (see ¶ 11 herein above and Exhibit “1” attached hereto);

(b) The refinancing of the subject Property was subject to TILA and Reg. Z and the transaction, “loan” and DOT were rescinded by operation of law pursuant to the unopposed Rescission sent on July 13, 2007 (see ¶¶ 12-17 herein above and Exhibit “2” attached hereto);

(c) AWL as the designated creditor as defined under TILA, failed to comply with its mandatory duties under 15 U.S.C. § 1635(b) *et seq*. within the statutory 20 day deadline after receipt of the Rescission. Therefore, the Note, DOT and all subsequently recorded instruments were likewise void as a matter of law effective as of August 2, 2007, plus any statutory time added for service by mail, pursuant to TILA, Reg. Z with Plaintiff’s claim for relief accruing in January 2015 pursuant to *Jesinoski*;

(d) The purported “debt,” whether existing or not was properly scheduled in Plaintiff’s Ch. 7 Bankruptcy as unsecured and therefore discharged pursuant to 11 U.S.C. § 727 and the

Court's Order on January 27, 2012 (see Doc #34, Case 10-61716 in the United States Bankruptcy Court Northern District of California (San Jose). Plaintiff's Property was not administered in the Bankruptcy; therefore, pursuant to 11 U.S.C. 554(c), the Property was abandoned to Plaintiff upon closing the case and the "debt" as unsecured, was discharged pursuant to 11 U.S.C. § 524 *et seq*. along with all other unsecured debts;

(e) There was no justiciable "cause of action" available in the 9th Circuit for Plaintiff's TILA Rescission, it being a remedy and not a cause of action notwithstanding, that could have been scheduled in Plaintiff's Bankruptcy until the *Jesinoski* Opinion in 2015 because prior to *Jesinoski*, the 9th Circuit held the TILA statute of repose deprived a district court of subject matter jurisdiction if a lawsuit was brought outside the three-year deadline;

(f) As in *Jesinoski*, Plaintiff served her Notice of Rescission timely within the 3 year statue of repose but she did not file a lawsuit within 3 years because no cause of action or claim for relief existed in the 9th Cir. until 2015 (see, e.g. *Takushi v. BAC Home Loans Servicing, LP*, 2015 U.S. LEXIS 634 (U.S. 2015 in which *Certiorari* was granted, judgment vacated [judgment dismissing the plaintiff's TILA claim because no lawsuit was brought within three years of consummation] and the case remanded to the 9th Cir. Court of Appeals for further consideration in light of *Jesinoski*);

(g) Defendants lack standing to oppose Plaintiff's Rescission because such standing to oppose the Rescission was ***only*** available to AWL as the statutory creditor pursuant to TILA. Therefore ***only*** AWL was authorized and was statutorily ***required*** to comply with the duties stated in § 1635(b) or oppose Plaintiff's Rescission which it failed to do within the 20 day statutory deadline. Therefore AWL is estopped by silence and acquiescence from challenging the Rescission having failed to comply with conditions precedent to such a challenge as are all Defendants to this action for their lack of standing as the statutorily defined Creditor; and

(h) While Estoppel and Waiver are frequently used interchangeably and the legal consequences are often the same, Waiver refers to the voluntary or intentional relinquishment of a known right (e.g. *Yoshida v. Liberty Mut. Ins. Co*. (1957) 240 F.2d 824, 829-830). AWL was notified of the Rescission; however, it voluntarily and intentionally relinquished its 15 U.S.C.

1635(b) rights by failing to comply with its mandatory duties within the statutory 20 day limit. This would also mean that the doctrine of *laches* also applies since it has now been over 8 years after the Rescission became effective by operation of law in 2007, the accrual of the claim for relief not being available until 2015 pursuant to *Jesinoski* notwithstanding.

**<u>COUNT 1</u>**
**CANCELLATION OF INVALID INSTRUMENTS**

58. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

59. It is undisputed that the subject purported Note and DOT were drafted in the name of AWL as the "Lender" and beneficiary, AWL's lack of existence notwithstanding. Plaintiff's TILA/Reg. Z Rescission was mailed in July 2007, within the 3 year extended TILA and Reg. Z statute of repose.

60. Upon Plaintiff's timely exercise of her right to rescind in 2007, she was no longer "liable for any finance or other charge, and any such interest arising by operation of law, [became] void upon such rescission" [145 U.S.C. § 1635(b)].

61. Within 20 days after receipt of the Rescission, AWL as the (only) statutorily defined creditor pursuant to 15 U.S.C. 1602(g) was required to (creditor "shall") return to Plaintiff "any money or property given as earnest money, downpayment, or otherwise" pursuant to 15 U.S.C. § 1635(b). AWL was further required and failed to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction" [15 U.S.C. § 1635(b)]. This means that no Defendant has standing to challenge the Rescission because no Defendant is or was ever, the statutorily defined creditor; only AWL was the statutorily defined creditor that maintained the statutory right for 20 days after receipt of the rescission pursuant to 15 U.S.C. § 1635(b).

62. Because the purported Note was allegedly evidence of the debt, the finance and other charges; also provided that the DOT was in fact part of the Note (pursuant to ¶ 11 therein); and further purported to provide for a "security interest given by the obligor" [see 15 U.SC. § 1635(b)], the Note itself was also rendered void by operation of law pursuant to the Rescission. Assuming *arguendo* that the purported debt survived notwithstanding the Rescission and merely rendered

any such debt unsecured; said debt was still properly scheduled (including, *inter alia*, in "SCHEDULE F") as an Unsecured Nonpriority Claim, Contingent, Unliquidated and Disputed, in or about January 2011 in Plaintiff's Chapter 7 Bankruptcy (U.S. Bkr. Court N. Dist. Cal. Case No. 10-61716 CN 7). Therefore said "debt" was discharged along with all other unsecured debts upon closing of Plaintiff's bankruptcy in 2012.

63.   As stated herein above, Plaintiff did not and could not schedule her Rescission as personal property or an asset (or "claim") in her Bankruptcy filed in 2010 because, notwithstanding that a TILA Rescission is a remedy and not a cause of action, no ability to assert a TILA claim for relief was available in the 9th Circuit without filing a lawsuit until *Jesinoski* in 2015 approximately 3 years after Plaintiff's bankruptcy case closed in January 2012.  Plaintiff's claim for relief therefore did not accrue until January 2015, after the U.S. Supreme Court ruled that the notice of rescission was all that was required to be timely served for the rescission to be effective which in this case was served in July 2007.

**Plaintiff is entitled to a Recordable Court Order of the Rescission and Cancellation of the Note**

64.   All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

65.   Plaintiff is entitled to the relief requested for a recordable Court Order of the Rescission and cancellation of the Note pursuant to TILA, its 11 U.S.C. § 727 *et seq*. discharge in bankruptcy, Cal. Civ. Code § 3412 and the inherent authority of this Court because the Note is a written instrument, in respect to which Plaintiff has a reasonable apprehension that if it is left outstanding it will continue to cause serious injury to Plaintiff and the title to her Property against whom the Note is void as a matter of law causing the clouding of, and disparaging, the title to Plaintiff's Property and the diminution of the value thereof.

**Plaintiff is entitled to a Recordable Court Order of the Rescission and Cancellation of the DOT**

66.   All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

67.   Plaintiff's Rescission was timely served on AWL within the extended 3-year statute of repose.  Therefore within 20 days after receipt of the Rescission, AWL, as the only creditor as

defined in 15 U.S.C. 1602(g) was required ("shall") and failed, to return to Plaintiff "any money or property given as earnest money, downpayment, or otherwise" and further was required ("shall") and failed to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."  AWL failed to comply within this statutory deadline. Therefore as stated herein above, Plaintiff's Rescission was effective by operation of law pursuant to TILA and Reg. Z in 2007 and Plaintiff's claim for relief accrued pursuant to *Jesinoski* in 2015.

68.    Plaintiff is entitled to the relief requested for a recordable Court Order of the Rescission and cancellation of the DOT pursuant to TILA and Cal. Civ. Code § 3412 and the inherent authority of this Court because the DOT is a recorded written instrument that remains on the record in respect to which Plaintiff has a reasonable apprehension that if it is left outstanding has caused and will continue to cause serious injury to Plaintiff and the title to her Property against whom the DOT is void as a matter of law causing the clouding of, and disparaging, the title to Plaintiff's Property and the diminution of the value thereof.

**Plaintiff is entitled to a Recordable Court Order Cancelling the SOT & ASSIGNMENT**

69.    All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

70.    The SOT & ASSIGNMENT was recorded subsequent to Plaintiff's TILA Rescission.  The authority for recording or causing the SOT & ASSIGNMENT to be recorded was purportedly derived from the DOT which was rescinded by operation of law nearly two years previous to the recording of the SOT & ASSIGNMENT.  Therefore, the recording of the SOT & ASSIGNMENT was *ultra vires* and also void pursuant to the Rescission in 2007 and claim for relief which accrued in 2015.

71.    Plaintiff is entitled to the relief requested for a recordable Court Order cancelling the SOT & ASSIGNMENT pursuant to Cal. Civ. Code § 3412 and the inherent authority of this Court because the SOT & ASSIGNMENT is a recorded written instrument that remains on the record in respect to which Plaintiff has a reasonable apprehension that if it is left outstanding has caused and will continue to cause serious injury to Plaintiff and the title to her Property against whom the SOT & ASSIGNMENT is void as a matter of law causing the clouding of, and disparaging, the title to Plaintiff's Property and the diminution of the value thereof.

**Plaintiff is entitled to a Recordable Court Order Cancelling SOT 2**

72.    All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

73.    Notwithstanding that SOT 2 was requested by ORDMS an entity that does not exist (see ¶ 32 *et seq*. herein above), SOT 2 claims ORDMS had authority for recording the SOT 2 in 2014 conferred to it by NewPenn and one Charlene R. Butler on October 7, 2014 pursuant to the DOT. However, the DOT was rescinded by operation of law in 2007 pursuant to the Rescission, TILA and the right to assert the Rescission which accrued pursuant to *Jesinoski* in 2015.

74.    Accordingly, SOT 2 falsely states that NewPenn "is the present Beneficiary under said Deed of Trust;" and neither NewPenn nor ORDMS (its lack of existence notwithstanding) had the authority each claimed and acted on.  Therefore SOT 2 was and remains a wrongfully recorded false instrument clouding and disparaging the title to Plaintiff's Property.

75.    As the self-proclaimed "beneficiary" and "servicer" for the non-existent BONYM and BONYMTrustee; NewPenn knew or should have known of the Rescission and that the Rescission was effective prior to the recording of SOT 2.  Therefore, the recording of SOT 2 was in violation of, *inter alia*, TILA, Reg. Z, Cal. Pen. Code §§ 115 et seq., 470(d), 471, 475(a) and (b), and 532 et seq., whether a private right exists to allege NewPenn's criminal acts or not.  The authority claimed by ORDMS and NewPenn to record or cause the SOT 2 to be recorded, was the SOT & ASSIGNMENT and DOT which were each as stated herein above, wrongfully recorded false instruments that were void as a matter of law  in 2007 prior to ORDMS (its lack of existence notwithstanding) recording SOT 2 in 2014. Therefore no such authority was conferred to ORDMS or to NewPenn through the DOT or SOT & ASSIGNMENT and the SOT 2 is also void as a matter of law.

76.    Plaintiff is entitled to the relief requested for a recordable Court Order cancelling SOT 2 pursuant to Cal. Civ. Code § 3412 and the inherent authority of this Court because SOT 2 is a recorded written instrument that remains on the record in respect to which Plaintiff has a reasonable apprehension that if it is left outstanding has caused and will continue to cause serious injury to Plaintiff and the title to her Property against whom the SOT 2 is void as a matter of law causing the clouding of, and disparaging, the title to Plaintiff's Property and the diminution of the value thereof.

**Plaintiff is entitled to a Recordable Court Order Cancelling NOD 2**

77. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

78. NOD 2was signed by one Dalaysia Ramirez for ORNTIC as the self-proclaimed "Trustee" and claims NOD 2 was authorized to be recorded 2014 pursuant to the DOT which was rescinded by operation of law in 2007. Therefore, neither ORNTIC nor Dalaysia Ramirez had the authority each claimed and NOD 2 was and remains a wrongfully recorded false instrument clouding and disparaging the title to Plaintiff's Property.

79. NOD 2was recorded with an accompanying "California Declaration of Compliance" ("Declaration") purportedly signed on December 10, 2014 in Houston Texas, by one Gary Cowherd ("Cowherd") for NewPenn. Said Declaration claims pursuant to Cowherd's purported review of its business records, that NewPenn had the right to foreclose, NOD 2 was accurate, complete and supported by competent and reliable evidence and that NewPenn exercised due diligence complying with Cal. Civ. Code § 2923.55(f) all of which is absolutely untrue in all respects.

80. Because the authority to record NOD 2 or otherwise initiate the foreclosure process was purportedly conferred by the DOT which was rescinded and rendered void by operation of law in July 2007 pursuant to the TILA Rescission, ORNTIC and NewPenn violated Cal. Civ. Code § 2924(a)(6) by recording or causing to be recorded NOD 2 when neither NewPenn nor ORNTIC were the holder of the beneficial interest under the DOT or the original trustee under the DOT, and neither were the lawfully authorized substituted trustee under the DOT because the DOT was void.

> " No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest." Cal. Civ. Code § 2924(a)(6)

81. Plaintiff is entitled to the relief requested for a recordable Court Order cancelling NOD 2 pursuant to Cal. Civ. Code § 3412 and the inherent authority of the Court because NOD 2 is an

instrument, in respect to which, Plaintiff reasonably apprehends that if it is left outstanding and on the record, it has caused and will continue to cause serious injury to Plaintiff and the title to her Property against whom NOD 2 is void as a matter of law.  As the self-proclaimed "servicer" for BONYM (its lack of existence and the void SOT & ASSIGNMENT notwithstanding), NewPenn knew or should have known the Rescission was effective prior to recording NOD 2.  Therefore, NOD 2 is a wrongfully recorded false instrument in violation of, *inter alia*, TILA, Reg. Z and Cal. Pen. Code §§ 115 et seq., 470(d), 471, 475(a) and (b), and 532 et seq., whether a private right of action exists to allege NewPenn's criminal acts or not.  The authority claimed by NewPenn to record NOD 2 was the DOT which was rescinded by operation of law in 2007 prior NewPenn recording NOD 2 in 2014.  Therefore no such authority was conferred to NewPenn through the DOT or the SOT & ASSIGNMENT and NOD 2 is void as a matter of law.

**Plaintiff is entitled to a Recordable Court Order Cancelling SOT 3**

82.    All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

83.    Notwithstanding that SOT 3 was requested by ORDMS an entity that does not exist (see ¶ 32 *et seq*. herein above), SOT 3 claims ORDMS had authority for recording the SOT 3 in 2014 conferred to it by NewPenn and one Charlene R. Butler on October 7, 2014 pursuant to the DOT.  However, the DOT was rescinded by operation of law in 2007 pursuant to the Rescission, TILA and the right to assert the Rescission which accrued pursuant to *Jesinoski* in 2015.

84.    Accordingly, SOT 3 falsely states that NewPenn "is the present Beneficiary under said Deed of Trust;" and neither NewPenn nor ORDMS (its lack of existence notwithstanding) had the authority each claimed and acted on.  Therefore SOT 3 was and remains a wrongfully recorded false instrument clouding and disparaging the title to Plaintiff's Property.

85.    As the self-proclaimed "beneficiary" and "servicer" for the non-existent BONYM and BONYMTrustee; NewPenn knew or should have known of the Rescission and that the Rescission was effective prior to the recording of SOT 3.  Therefore, the recording of SOT 3 was in violation of, *inter alia*, TILA, Reg. Z, Cal. Pen. Code §§ 115 et seq., 470(d), 471, 475(a) and (b), and 532 et seq., whether a private right exists to allege NewPenn's' criminal acts or not.  The authority claimed by ORDMS

and NewPenn to record or cause the SOT 3 to be recorded, was the SOT & ASSIGNMENT and DOT which were each as stated herein above, wrongfully recorded false instruments that were void as a matter of law in 2007 prior to ORDMS (its lack of existence notwithstanding) recording SOT 3 in 2014. Therefore no such authority was conferred to ORDMS or to NewPenn through the DOT or SOT & ASSIGNMENT and the SOT 3 is also void as a matter of law.

86. Plaintiff is entitled to the relief requested for a recordable Court Order cancelling SOT 3 pursuant to Cal. Civ. Code § 3412 and the inherent authority of this Court because the SOT 3 is a recorded written instrument that remains on the record in respect to which Plaintiff has a reasonable apprehension that if it is left outstanding has caused and will continue to cause serious injury to Plaintiff and the title to her Property against whom the SOT 32 is void as a matter of law causing the clouding of, and disparaging, the title to Plaintiff's Property and the diminution of the value thereof.

**Plaintiff is entitled to a Recordable Court Order Cancelling the NOTS**

87. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

88. ORNTIC's and NewPenn's wrongful recording and conspiracy to record the NOTS were Fraud. As stated in ¶ 25(f) herein above, **the NOTS was willfully and intentionally recorded on April 30, 2015 by ORDMS claiming to be a division of ORNTIC** and states it was requested to be recorded by ORDMS. Because the NOTS also states that after recording it was to be mailed to NewPenn, it is reasonable to assume, and on such information and belief Plaintiff alleges, that ORNTIC conspired with NewPenn using ORDMS as its surrogate and unregistered fictitious name in order to avoid its liability, to wrongfully record this false instrument thereby committing mortgage fraud, conspiracy and conspiracy to commit mortgage fraud, forgery and counterfeiting on the following grounds (Plaintiff's lack of a private right of action for criminal acts notwithstanding):

(a) Every person who knowingly procures or offers any false or forged instrument to be recorded is guilty of a felony [Cal. Pen. Code § 115(a)]. ORNTIC, its apparent surrogate, the non-existing entity ORDMS and NewPenn each knew in advance of recording the NOTS that the information contained in the NOTS was untrue and that the NOTS would be being a

wrongfully recorded false instrument.  ORNTIC was apprised in writing on no less than 4 occasions prior to recording the NOTS, of its lack of authority to do so, *inter alia*:

(1)     In a Denial of Debt - Demand to Cease and Desist Debt Collection Activities Demand to Rescind Notice of Default and Substitution of Trustee letter mailed by Plaintiff's attorney to ORDMS, ORNTIC and NewPenn *et al*. dated **December 17, 2014**, Plaintiff's attorney explained, *inter alia*, that: (a) The DOT was a forged instrument as recorded and the "Lender" named therein as AWL did not exist; and (b) The SOT 2 and NOD 2 were wrongfully recorded false instruments in violation of Cal. Pen. Code §§ 115 et seq., 470(d), 471, 475(a) and (b) and 532 *et seq*.

(2)     In a Qualified Written Request; Denial of Debt; Demand to Cease Debt Collection Activities; Demand to Rescind Notice of Default and Substitution of Trustee letter mailed by Plaintiff's attorney to ORDMS, ORNTIC and NewPenn *et al*. dated **January 7, 2015**, Plaintiff's attorney further explained, *inter alia*, that: (a) neither ORNTIC nor NewPenn had any authority to record the wrongfully recorded false NOD and SOT 2; (b) that the DOT was forged and Constructively noticed as  such pursuant to Document no. 2010-0025490 recorded on July 2, 2010; (c) that the DOT and Note were invalid pursuant to Cal. Civ. Code § 1558 because the "Lender" did not exist; and (d) that there was no lien on Plaintiff's Property.

(3)     In a Supplemental Denial of Debt - Demand to Cease and Desist Debt Collection Activities; Demand to Rescind Notice of Default and Substitution of Trustee; Notice that "LOAN" was Rescinded and Discharged letter to ORDMS and NewPenn *et al*. dated **February 13, 2015** along with a copy of the Rescission and of the Bankruptcy discharge Order of the unsecured debt, further explaining that (a) the transaction and DOT were rescinded by operation of law in 2007 and there was no response whatsoever from the creditor thereto; (b) that the Creditor was required to return $168,411.58 to Plaintiff pursuant to Reg. Z and TILA and failed to do so within the 20 day statutory deadline or otherwise; and (c) that rescissions of NOD 2 and SOT 2 were accordingly required to be recorded.  This letter was followed up with another follow up letter on **March 27, 2015**.

(4)     In a letter dated **January 12, 2015**, David Liu from Severson & Werson ("Liu") claimed to represent ORNTIC and ORDMS and that he had reviewed the aforementioned December 17, 2014 Letter refusing to address Plaintiff's contentions, claiming "the foreclosure process [was] proper" and admitted to the recording of NOD 2 on December 19, 2014.

(b)     In a letter dated **January 22, 2015**, Liu denied that ORDMS did not exist and was a "division of" ORNTIC; and once again claimed "the foreclosure process was and is proper" also denying Plaintiff's claim that NewPenn has no right to foreclose and it would be "fruitless to continue with further correspondence on these issues."

(c)     In an unsigned letter dated **February 6, 2015** from NewPenn with one L. Hampton named in the signature block in response to the letter dated December 17, 2014, NewPenn claimed that BONY "as Trustee for CWMBS 2005-02...is currently the owner of the account." As stated hereinabove, BONY did not exist then, and does not exist now.  NewPenn's letter further claimed that: (1) Plaintiff "owed...$685,099.62;" (2) that NewPenn is the "servicer" and is not required to, *inter alia*, "respond to inquiries related to origination, underwriting, subsequent sale or securitization, or determination to sell, assign, or transfer the servicing of the mortgage loan."  NewPenn further (and falsely) claimed that the current owner is BONY in New York; the "loan originated with America's Wholesale Lender on December 10, 2004;" that (line item No. 5) the loan was transferred to NewPenn with a principal balance of $581,688.46; that Bank of America, N.A. is the *Master Servicer* and NewPenn the *Sub-Servicer*.  NewPenn further stated in writing that "**This is an attempt to collect a debt and any information obtained will be used for that purpose.  This communication is from a debt collector**." (Emphasis added.)

(d)     In a letter dated **February 20, 2015** from Liu, he once again stated that he and Severson & Werson in Irvine California represented ORNTIC and ORDMS and now also claimed to represent "Old Republic Diversified Services, Inc." ("ORDSI")  Liu stated: (1) that he had reviewed Plaintiff's attorneys' February 13, 2015 letter to ORNTIC and NewPenn re Plaintiff's contention that "the subject loan was rescinded and/or discharged by a bankruptcy order;" (2)

that NewPenn was "the current servicer;" (3) that NewPenn did not agree with Plaintiff's contentions; (4) that "the loan is active but in default;" (5) that "Old Republic" "is acting as the foreclosure trustee for the subject loan;" and (6) that ORNTIC/ORDMS/ORDSI as "Old Republic...does not dispute [NewPenn's] position."

(e)      In an unsigned letter dated **March 20, 2015** once again stated to be from L. Hampton for NewPenn, once again it was claimed therein that "The Bank of New York as trustee for CWMBS 2005-02 ("BONY") currently owns the above referenced loan;" NewPenn "began servicing the loan on behalf of the owner referenced above, on or about March 1, 2014." Once again as stated herein above BONY does not exist and never did as named. This letter proceed to state that "the mortgage loan is in default for non-payment and foreclosure proceedings have been instituted;" that NewPenn "[a]s the *servicer*," (emphasis in original) "does not have knowledge of the loan closing or any other aspects of the loan unrelated to the *servicing*." (Emphasis in original.) NewPenn admitted that its "records indicate the loan was discharged through a Chapter 7 Bankruptcy in 2010. Therefore, [NewPenn] is not attempting to collect the debt, as your client's personal liability was discharged." Further stating that "[h]owever, the mortgage lien survived the discharge and [NewPenn] will continue to service the loan according to the original agreement and protect the creditor's rights in the associated property." Also attached subsequent to the foregoing was "This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector" and "[t]his communication is from a debt collector."

**ORNTIC and NewPenn Conspired with each other to Wrongfully Record the False NOTS**

89.    All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

90.    Therefore, as exhibited pursuant to the above, ORNTIC and NewPenn knew (and each were notified by Plaintiff's attorney in writing as stated herein) that the NOTS was a false instrument before recording it. Plaintiff contends that ORNTIC and NewPenn in conspiracy with each other by and among Abraham Bartamian, Assistant Secretary for MERS; Linda Mayes, Assistant Secretary for ONRTIC; Ray Rahimi, Loss Mitigation Specialist for NewPenn; Charlene R. Butler for NewPenn and

the purported "Trustee Sale Officer" for ORNTIC; and Dalaysia Ramirez, Assistant Secretary for ORNTIC; or other undisclosed persons in their respective representative or other capacity, intended the wrongfully recorded false NOTS to be relied on by all others in their wrongful and unlawful attempt to foreclose on Plaintiff's Property without any authority and thereby collect a debt that ORNTIC and NewPenn knew was not owed causing the damages complained of herein. Evidence of such conspiracy and intent is evidenced by the NOTS itself which shows it was requested to be recorded by ORDMS and when recorded was to be mailed to NewPenn. Evidence of ORNTIC's and NewPenn's conspiracy and fraud were also evidenced pursuant to SOT 2 and SOT 3 each of which was signed by one Charlene R. Butler for NewPenn "as the undersigned beneficiary," when the recordings were requested by ORDMS. Further evidence of the conspiracy, fraud and attempts to collect a debt not owed (also in violation of the FDCPA and Rosenthal) includes NOD 2 which was signed by one Dalaysia Ramirez for ORNTIC therein stating that the entity to contact to stop the sale of Plaintiff's Property by "paying the entire amount demanded" was NewPenn (see: James v. Pratt & Whitney, United Techs. Corp. (2005) 126 Fed. Appx. 607; 42 U.S.C. § 1985; *Castle v. Central Ben. Mut. Ins. Co.* (1990) 751 F.Supp. 717 and Defendants' violation of 42 U.S.C. § 1986 when both ORNTIC and NewPenn had prior knowledge as stated herein, with the power to and failure to prevent the § 1985 conspiracy and wrongful recording of the false NOTS, a felony in California, Plaintiff's lack of a private right of action thereon notwithstanding).

**ORNTIC and NewPenn Committed Forgery**

91. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

92. In addition to the foregoing evidence of prior knowledge and falsity of the NOTS as recorded in violation of Cal. Pen. Code § 115 *et seq*.; it is further evidenced by its recording that ORNTIC and NewPenn intended to publish as true, while knowing same to be false, the NOTS as an instrument of writing, demand and claiming the power to receive money each never had. Therefore, ORNTIC and NewPenn have each violated Cal. Pen. Code §§ 470(d), 471 and 475(a). Plaintiff's lack of a private right of action for these crimes notwithstanding, these criminal actions

constitute the requisite predicate acts in support of Plaintiff's Calif. Unfair Practices Act claim for relief alleged herein below.

93. For the reasons and upon the grounds stated herein, Plaintiff is entitled to the relief requested pursuant to Cal. Civ. Code § 3412 and the inherent authority of the Court because the NOTS is an instrument, in respect to which, Plaintiff is reasonably apprehensive that if it is left outstanding and on the record, will continue to cause serious injury to Plaintiff and the title to her Property against whom it is void.

**COUNT 2**

**SLANDER AND DISPARAGEMENT OF THE TITLE TO PLAINITFF'S PROPERTY**

(Against ORNTIC, NewPenn, BONYMCorp and MERS)

94. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

95. The Court's ruling in 13:26-14:2 of the MTD Order provided that Plaintiff retained the standing to bring her slander of title count for NewPenn's and BONYMCorp's recording of the NODs, SOTs and NOTS for containing false statements regarding the discharge of the purported debt. However, the Court's holding in 13:9-10 of the MTD Order states that Plaintiff's Slander of Title claim against ORNTIC belongs to the [bankruptcy] estate is misplaced and Plaintiff adds MERS in this Count for the following reasons:

**ORNTIC's, NewPenn's, BONYMCorp's and MERS' Slander and Disparagement of Plaintiff's Title**

(a) Plaintiff's slander and disparagement of title claim for relief was alleged against not only ORNTIC but also against NewPenn and BONYMCorp in Plaintiff's FAC. MERS has been now been added to this claim for relief for the reasons and on the grounds stated herein.

**Defendants' Slander and Disparagement of the Title to Plaintiff's Property was Post Petition and not Property of the Bankruptcy Estate**

(b) Defendants' slander and disparagement of the title to Plaintiff's Property did not occur pre-petition or belong to the estate as the Court suggested in 9:9-10 of the MTD Order for the following reasons:

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 39 of 102

(1) ORNTIC's and NewPenn's slander and disparagement of the title to Plaintiff's Property occurred not only post-petition but well after the bankruptcy case closed. Plaintiff's bankruptcy was filed on November 12, 2010 and Plaintiff's unsecured debts were discharged and the case closed pursuant to court order on January 27, 2012. ORNTIC's slander and disparagement of title commenced with the wrongful recording of the false NOD 1 on October 21, 2014 and continued with the wrongful recordings of the false SOT 2, NOD 2, SOT 3 and NOTS (see ¶¶ 33-37 as further detailed herein above); and

(2) BONYMCorp and MERS' slander and disparagement of the title to Plaintiff's Property was committed by BONYMCorp vicariously through MERS by MERS claiming to be the nominee for AWL and having successor nominee status for BONYMCorp (although untrue) and by MERS itself because of MERS wrongful recording of the false SOT & Assignment on December 7, 2009. Although MERS recorded the SOT & Assignment pre-petition, the slander and disparagement of the title to Plaintiff's Property is a continuing one because the SOT & Assignment remains on the record as a wrongfully recorded false instrument (see ¶¶ 31 and 32 herein above). Contrary to Defendants and the Courts' assertions, the Rescission relied on for the invalidity of the SOT & Assignment, although effective pre-petition in 2007, as further stated herein, Plaintiff's right to assert her TILA Rescission did not accrue until *Jesinoski* in January 2015 long after Plaintiff's bankruptcy closed and the court ordered discharge of all unsecured debts.

**Elements of Slander of Title Tort**

96. The elements of a claim for slander of title are (1) publication; (2) falsity; (3) absence of "privilege" or justification; and (4) pecuniary loss (*Alpha & Omega Dev., LP v. Whillock Contracting, Inc*. (2011) 200 Cal.App.4th 656, 664 whereas *Howard v. Schaniel* (1980) 113 Ca.App.3d 256, 263-264) as cited by the Court in the MTD Order further described the third element for the absence of privilege or justification in *Whillock Contracting Inc., Id*. to also mean "...without privilege ***or*** justification and thus with malice, express or implied" (emphasis added).

**Re Publication**

97. ORNTIC, NewPenn, BONYMCorp and MERS in concert, conspiracy, directly or at the direction of one or the other, wrongfully recorded or caused to be wrongfully recorded NOD 1, NOD 2, SOT 2, SOT 3 and the NOTS. As also stated herein, MERS recorded or caused to be recorded the SOT & Assignment.

98. All the above referenced instruments were published by their recording and remain on the record in in Santa Cruz County, each clouding the title to Plaintiff's Property.

**Defendants' acts were not Privileged and were Without Justification**

99. While Cal. Civ. Code § 2924(d) provides that the mailing, publication and delivery of notices required, performance of procedures and functions necessary to carry out foreclosure duties *by an original or duly substituted trustee* are "privileged communications pursuant to Section 47," no Defendant was either the original or substituted trustee because the DOT relied on for such authority was previously rescinded prior to the publication by recording of these instruments. Cal. Civ. Code § 47 states such "privileged communications" are only those "[i]n the proper discharge of an official duty" [§ 47(a)]; "in any other official proceeding authorized by law" [§ 47(b) item (2)]; "[i]in a communication, without malice, to a person interested therein [§ 47(c)]; or "[b]y a fair and true report in, or a communication to, a public journal, of...(C) other public official proceeding [§ 47(d)(1)]. No Defendant had an authorized "official duty" or was able to effect "proper discharge" of said "official duty" which means and no publication (recording of instruments) was "authorized by law."

100. The Court's Order cites Cal. Civ. Code §§ 2924 (a) and (d) and for the proposition that recording foreclosure related "notices of default and trustee sale are privileged acts" and such acts cannot form the basis for a tort claim, including slander of title unless malice is alleged [citing *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316 ("*Markowitz*")]. The term "malice" used in this context means: "actual malice, meaning that the publication was motivated by ... a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights" *Markowitz, Id.* at 336; citing *Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413.

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 41 of 102

101. However, the Court's assertions that such privilege applies, that there was no malice, that Defendants' failure to rescind the recorded instruments or that there was any "statutorily protected act of recording" that were "no less privileged" are also misplaced for the following additional reasons (note, in *Markowitz*, it was undisputed that there was a substituted trustee ("who holds that title as security for repayment" [*Id*. at 334] unlike here where there is no substituted trustee because the DOT relied on for such authority was Rescinded):

(a) The Civ. Code § 47 publication and broadcast privilege does not apply to these Defendants because:

(1) the "qualified common interest privilege" provides that trustees are in fact open to liability if they act with malice (*Markowitz, Id*., at 333) as admitted by the Court in the MTD Order. As defined, the publication of these recorded instruments was with malice as further explained herein below:

(2) As cited by the Court in the MTD Order, the term "malice" means, without privilege "***or***" justification. In this case Defendants maintain no such privilege because no defendant is qualified for privileged communications. The delivery of notices pursuant to Cal. Civ. Code § 2924(d)(1) are only for "delivery of notices required by this section." "[T]his section" of the Civil Code does not "require[]" notices be delivered that are invalid and void or by parties not "authorized by this section." The only parties qualified to record these instruments include [pursuant to Cal. Civ. Code § 2924(a)(1)]: "[t]he trustee, mortgage, or beneficiary, or any of their authorized agents." No Defendant in this instant action qualifies for such authority because such authority could only have been conferred pursuant to an existing legitimate deed of trust. Whereas, the DOT in this instant action was rescinded by operation of law in 2007 after its assertion accrued pursuant to Jesinoski in 2015. Neither can Defendants be justified in wrongfully recording these false instruments because they were on notice of their lack of authority pursuant to the written communications with Defendants' attorneys as explained in ¶¶ 38, 88 *et seq*. and 154 *et seq*., herein prior to Defendants wrongfully recording the false NOTS and as a result Plaintiff being forced to file this action.

**Re Falsity**

102. The SOT & Assignment, NOD 1, SOT 2, NOD 2, SOT 3 and the NOTS were wrongfully recorded false instruments because the authority Defendants claim for recording the instruments was pursuant to the DOT which was rescinded by operation of law in 2007 the assertion for which accrued in 2015. The false statements made in these recorded and published instruments were each attributable to the Defendants as a result of their participation and complicity in the acts complained of herein and include, *inter alia:*

(a) That AWL was ever the "Lender" when it was not;

(b) That MERS was the actual "Beneficiary" when it was not;

(c) That "THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWMBS, INC. CHL MORTGAGE PASS-THROUGH TRUST 2005-02 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02 ever existed as named which it never did;

(d) That MERS had the authority to "grant[], assign, convey and transfer any "beneficial interest" under the DOT "[t]ogether with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust" which it did not;

(e) That any "beneficial interest under" the DOT existed at the time the SOT & Assignment was recorded and published when it did not because the transaction, "loan" and DOT had been Rescinded by operation of law;

(f) That Plaintiff was "BEHIND IN YOUR PAYMENTS" when she owed no such payments;

(g) That there were "past due payments plus permitted costs and expenses" which there were not;

(h) That $204,568.48 was due as of 10/21/2014, $209,134.02 as of 12/18/2014, or that Plaintiff had any other obligations related to the Property or purported DOT at those times, or at any other. Nor did Plaintiff have an "account" at any time subsequent to the Rescission;

(i) That Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company either existed or was the original or duly appointed substituted trustee or acting as agent for the trustee or beneficiary under the purported DOT (nor was Old Republic National Title Insurance Company as proffered in SOT 3);

(j) That the Purported DOT "secure[ed] certain obligations in favor of" MERS when it did not;

(k) That MERS was the "NOMINEE FOR AMERICA'S WHOLESALE LENDER, A CORPORATION, as beneficiary" when it was not;

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 43 of 102

(l) That the "one Note(s) for the original sum of $544,00.00" was an "obligation" subsequent to the Rescission when it was not;

(m) That the "beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-02, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02 as the current beneficiary or its agent which was untrue;

(n) That any "[i]nstallment of Principal and Interest plus impounds and/or advances which became due on 12/1/2008 plus late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges that became payable" were in fact payable subsequent to the Rescission which they were not;

(o) That there existed any "present beneficiary" under the DOT subsequent to the Rescission or at any other time;

(p) That there were "...ANY OTHER FEES OWING TO THE BENEFICIARY, OR OTHER DEFAULT BY THE TRUSTOR, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS;

(q) That Old Republic National Title Insurance Company was the "Trustee";

(r) That there was any "borrower's loan" subsequent to the Rescission or at any other time;

(s) That there was any "borrower's present loan default" or any "right to foreclose";

(t) That the "mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options to avoid foreclosure as required by California Civil Code § 2923.55;

(u) That any "initial contact was made";

(v) That there was any "mortgage servicer" subsequent to the Rescission;

(w) That the "mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f)" or were "satisfied";

(x) That there was an "above-referenced Loan";

(y) That "New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-02, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02 was or is the "present Beneficiary under" the DOT;

(z) That the DOT provided any "manner" in which NewPenn could substitute "a new Trustee" thereunder subsequent to the Rescission thereof;

(aa) That NewPenn substituted ORDMS "as Trustee under said Deed of Trust";

(ab) That NewPenn was authorized to authorize the recording of any NOD;

(ac)   That the "information set forth" in the "CALIFORNIA AUTHORIZATION TO PROCEED" was "accurate, complete and supported by competent and reliable evidence";

(ad)   That "the contents of the Notice of Default, as well as any applicable Substitution of Trustee and Assignments(s)" were "accurate, complete and supported by competent and reliable evidence";

(ae)   That "THE NOTICE [was] PROVIDED TO THE TRUSTOR ONLY PURSUANT TO CA CIVIL CODE 2923.3";

(af)   That Plaintiff was "IN DEFAULT UNDER A DEED OF TRUST DATED 12/10/2004";

(ag)   That Plaintiff's Property was able to be "SOLD AT A PUBLIC SALE";

(ah)   That "Old Republic Default Management Services, a Division of Old Republic National Title Insurance Company" was the "duly appointed Trustee pursuant to the Deed of Trust, Recorded 12/21/2004";

(ai)   That the DOT Recorded as Instrument No. 2004-0089505 was "executed by: KIMBERLY COX, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY";

(aj)   That there were any "SUCCESSORS AND ASSIGNS as Beneficiary" to MERS "AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, A CORPORATION"; and

(ak)   That the total amount due was or is "$692, 994.86" or any other amount.

**Re Pecuniary Loss**

103.   Plaintiffs have suffered direct pecuniary loss having made mortgage payments which were not owed and upon which ORNTIC, NewPenn and BONYMCorp rely to offset their claim for the balance of the debt they claim is due by foreclosing on Plaintiff's Property without authority.  In addition, as a result of ORNTIC's, NewPenn's, BONYMCorp's and MERS' acts, Plaintiff has suffered further economic damages in an amount to be determined according to proof at trial for the diminution of the value of her Property, lost rental income, as well as those damages related to rendering the Title to Plaintiff's Property unmarketable and unvendible and for costs and attorneys' fees attributable to this litigation.  Accordingly, in addition to the foregoing, Plaintiff demands the relief sought pursuant to Fed. R. Civ. Proc., Rule 8(a)(3) as further specified herein.

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 45 of 102

**COUNT 3**

**FRAUD**

(Against ORNTIC and NewPenn)

104. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

105. Pursuant to the MTD Order, the Court recognized in 13:26-14:2 and 16:11-19 of the MTD Order that Plaintiff retained standing to allege fraud against ORNTIC and NewPenn for misrepresenting themselves as the substituted trustee and servicer respectively for Plaintiff's purported debt because the related debt, if any, was discharged in Plaintiff's Ch. 7 bankruptcy.

106. However, the Court's ruling in the MTD Order that portions of Plaintiff's fraud allegations belong to the estate are once again misplaced because Plaintiff's right to assert the Rescission which rendered the DOT from which all authority for Defendants actions were purportedly derived did not accrue until 2015. This means no portions of Plaintiff's fraud claims belong or ever belonged to or were property of the bankruptcy estate because: the Rescission was: (a) a remedy, not a "cause of action;" and (b) Plaintiff's claim for relief to assert her Rescission did not accrue until *Jesinoski* in 2015, approximately 3 years after Plaintiff's bankruptcy case closed. Further, Defendants' fraudulent acts complained of were perpetrated post-petition, post-closing and subsequent to the judicial discharge of Plaintiff's unsecured debts which included the debt purportedly evidenced by the subject Note.

**Elements of Fraud**

107. The elements of fraud include: (a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage (see *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 363; the Court citing *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 in its MTD Order providing the same elements by further citing 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p 778; Cal. Civ. Code § 1709; *Hunter v. Up-Right* (1993) 6 Cal.4th 1174, 1184; and *Molko v. Holy Sprint Assn.* (1998) 46 Cal. 3d 1092, 1108).

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 46 of 102

108. "Actual fraud is defined as any deceit or design with the intent to cheat, including silence, concealment, or nondisclosure" (*Mega Enters. v. Lahiri* (in re Lahiri) (1998) 225 B.R. 582, 588 (internal citation omitted); also see 18 U.S.C. §§ 1341, 1346; "Fraud" also means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury" (Cal. Civ. Code § 3294(c)(3).

109. In its MTD Order the Court agreed with Defendants that rather than providing and referencing the recorded instruments containing the "names of the persons who made the allegedly fraudulent misrepresentations, [and] their authority to speak" further citing Digby, 2015 WL 1548872, at *3, Plaintiff failed to "allege '*which entity*' recorded the challenged instruments" (emphasis in original) even though Plaintiff alleged such instruments were recorded or caused them to be recorded by ORNTIC and NewPenn. Accordingly, Plaintiff provides the following from those recorded instruments which the Court ruled was not pled with such sufficient particularity. Plaintiff alleges Fraud against both ORNTIC and NewPenn each jointly, severally and in conspiracy with each other for the following misrepresentations, each with knowledge thereof and with the intent to induce justifiable reliance thereon resulting in the damages complained of herein for which plaintiff seeks appropriate relief.

**ORNTIC'S FRAUD**

**ORNTIC has not appeared in this Action - Steele has brought Fraud upon this Court**

110. As a threshold matter, Plaintiff contends ORNTIC has failed to make an appearance in this action and therefore has no ability or right to defend against Plaintiff's allegations. As stated in ¶¶ 42-46 herein above, Plaintiff has not sued ORDMS which is an entity that does not exist and as a non-party to this action maintains no authority to represent ORNTIC nor does Steele who claims to be ORDMS' attorney, not ORNTIC's. Plaintiff is informed and believes and thereon alleges that Steele is bringing fraud upon this court by claiming to represent (a) a party that does not exist; and (b) claiming ORNTIC the party that plaintiff has sued, was the erroneous name of the non-existent party Steele claims to represent ORDMS (see Fed. R. Civ. P., R. 11(b) *et seq*.). For the reasons stated herein above, Plaintiff further contends the Court erred in attributing any arguments or representations

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 47 of 102

were made by ORNTIC in opposition to Plaintiff's FAC because ORNTIC has *not* appeared in this action. ORDMS is not ORNTIC.

**Re NOD 1**

111. NOD 1 (see ¶ 33 herein above) is incomplete where fails to show who it was requested to be recorded by in its heading. However when recorded, it was requested to be mailed to New Penn Financial, LLC d/b/a Shellpoint Mortgage Se 55 BEATTIE PLACE, SUITE 110 MAIL STOP 005 GREENVILLE, SC 29601; was dated October 21, 2014 and purportedly signed by one Linda Mayes, Assistant Secretary for Old Republic National Title Insurance Company, As Trustee.

112. Attached to and recorded with NOD 1 was an additional form entitled "California Declaration of Compliance" that was dated October 10, 2014 purportedly signed in Houston Texas by one Ray Rahimi as a Loss Mitigation Specialist for New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("CDOC1").

113. The DOT was deemed void by operation of law pursuant to the TILA Rescission in 2007 the remedy for which, as explained herein, accrued pursuant to *Jesinoski* in 2015. The SOT & ASSIGNMENT signed by one Abraham Bartamian on November 13, 2009 for MERS as its "Assistant Secretary" was also void because its authority was purported to have been derived from the DOT. Therefore, NOD 1 was also void as a matter of law because its authority was purported to have been derived from the DOT and SOT & ASSIGMMENT which were void.

114. Despite of the invalidity of NOD 1, Linda Mayes purporting to be the Assistant Secretary for ORNTIC signed NOD 1 on or about October 21, 2014 and caused the recording of NOD 1 on October 28, 2014 which included publishing the following misrepresentations:

(a) that Plaintiff's Property was in foreclosure because she was behind in her payments;

(b) that Plaintiff had past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of her account;

(c) that the "amount [was] $204,568.48 as of 10/21/2014;"

(d) that the aforesaid "amount" could increase until Plaintiff's "account" bec[ame] current;"

(e) that "your note and Deed of Trust or mortgage" existed at that relevant time;

(f) that there were "future payments on the loan;"

(g) that there were any "obligations as required in the note and Deed of Trust or mortgage;"

(h) that there was any "beneficiary or mortgage" existing let alone that could "insist" that Plaintiff pay the aforementioned "obligations" that did not exist or "require" that Plaintiff "as a condition of reinstatement...provide reliable written evidence that [Plaintiff] paid all senior liens, property taxes, and hazard insurance premiums;"

(i) that there were any "senior liens;"

(j) that there was any "amount you must pay;"

(k) that Plaintiff had an "account;"

(l) that Plaintiff had "to pay" anything;

(m) that there was any "default" to "cure;"

(n) that there was any "obligation being foreclosed upon;"

(o) that there was any "separate written agreement between [Plaintiff] and [her] creditor;"

(p) that there was any such "creditor;"

(q) that Plaintiff had "only the legal right to stop the sale of [her] property by paying the entire amount demanded by [her purported] creditor;"

(r) "[t]hat Old Republic Default Management Services" was "a Division of Old Republic National Title Insurance Company;"

(s) that ORDMS was "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 12/10/2004;"

(t) that said "Deed of Trust" was "executed by KIMBERLY COX, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, A CORPORATION, as beneficiary;"

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 49 of 102

(u) that there were any "obligations" including "one Note(s) for the original sum of $544,000.00;"

(v) that "[t]he beneficial interest under such Deed of trust and the obligations secured thereby are presently held by New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-02, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02 as the current beneficiary or its agent;"

(w) that any of the entities cited in NOD 1 existed (see ¶¶ 42-43 and 48-51 herein above);

(x) that there was any existing "Deed of Trust" as security for any "obligations;"

(y) that there were "ANY OTHER FEES OWING TO THE BENEFICIARY;"

(z) that there were any applicable "TERMS OF THE LOAN DOCUMENTS;"

(aa) that ORNTIC was a "Trustee;" and

(ab) that ORNTIC had any right to "attempt[] to collect a debt" since no debt existed.

**CDOC1 Attached to NOD 1**

115. The following misrepresentations were also recited in the published CDOC1 by Ray Rahimi claiming to be the Loss Mitigation Specialist for NewPenn in support of, and attached to, ORNTIC's NOD 1. CDOC1 was signed in Houston Texas on or about October 10, 2014; and wrongfully recorded and published with NOD 1 on October 28, 2014.

116. Despite the invalidity of NOD 1, ORNTIC and Linda Mayes its purported Assistant Secretary, vicariously through (see, *Clark v. Capital Credit & Collection Servs., Supra)*, and in conspiracy with, NewPenn and Ray Rahimi its Loss Mitigation Specialist , signed, recorded and published the following misrepresentations:

(a) that there was a "borrower's loan" when there was not;

(b) that there was a "loan default" when there was not;

(c) that any "right to foreclose" existed when it did not;

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 50 of 102

(d) that the information set forth in the CDOC was "accurate, complete and supported by competent and reliable evidence" when it was not;

(e) that NewPenn was "the mortgage servicer" which it was not;

(f) that NewPenn "exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55" which it did not; and

(g) that "these due diligence requirements were satisfied" which they were not.

**Re NOD No. 2**

117. NOD 2 (see ¶ 35 herein above) is incomplete where fails to show who it was requested to be recorded by in its heading. However when recorded, it was requested to be mailed to New Penn Financial, LLC d/b/a Shellpoint Mortgage Serv 55 BEATTIE PLACE, SUITE 110 MAIL STOP 005 GREENVILLE, SC 29601; was dated October 21, 2014 and purportedly signed by one Dalaysia Ramirez, Assistant Secretary for Old Republic National Title Insurance Company, As Trustee.

118. Attached to and recorded with NOD 2 was an additional form entitled California Declaration of Compliance that was dated December 10, 2014 and purportedly signed in Houston Texas by one Gary Cowherd purportedly a Loss Mitigation Specialist for New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("CDOC2").

119. The DOT was deemed void by operation of law pursuant to the TILA Rescission in 2007 the remedy for which, as explained herein above, accrued pursuant to *Jesinoski* in 2015. The SOT & ASSIGNMENT signed by one Abraham Bartamian on November 13, 2009 for MERS as its "Assistant Secretary" was also void because its authority was purported to have been derived from the DOT. Therefore, NOD 2 was also void as a matter of law because its authority was purported to have been derived from the DOT and SOT & ASSIGMMENT which were void.

120. Despite the invalidity of NOD 2, Dalaysia Ramirez purporting to be the Assistant Secretary of ORNTIC (note, Dalaysia Ramirez also claimed to be the "Trustee Sale Officer" as further detailed in the NOTS in ¶¶ 37 and 78-81 herein), signed NOD 2 on or about December 18, 2014 and caused the recording of NOD 2 on December 19, 2014 which included publishing the following misrepresentations:

(a)     that Plaintiff's Property was in foreclosure because she was behind in her payments when she was not;

(b)     that Plaintiff had past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of her account which they did not;

(c)     that the "amount [was] $209,134.02 as of 12/18/2014" which was untrue;

(d)     that the aforesaid "amount" could increase until Plaintiff's "account" bec[ame] current" which it could not;

(e)     that "your note and Deed of Trust or mortgage" existed at that relevant time which it did not;

(f)     that there were "future payments on the loan" which there were not;

(g)     that there were any "obligations as required in the note and Deed of Trust or mortgage" which there were not;

(h)     that there was any "beneficiary or mortgage" existing, let alone that could "insist" that Plaintiff pay the aforementioned "obligations" that did not exist or "require" that Plaintiff "as a condition of reinstatement...provide reliable written evidence that [Plaintiff] paid all senior liens, property taxes, and hazard insurance premiums;"

(i)     that there were any "senior liens" when there were not;

(j)     that there was any "amount you must pay" which there was not;

(k)     that Plaintiff had an "account" which she did not;

(l)     that Plaintiff had "to pay" anything which she did not;

(m)     that there was any "default" to "cure" when there was not;

(n)     that there was any "obligation being foreclosed upon" when there were no such obligations;

(o)     that there was any "separate written agreement between [Plaintiff] and [her] creditor" which there was not;

(p)     that there was any such "creditor" when there was not;

(q)     that Plaintiff had "only the legal right to stop the sale of [her] property by paying the entire amount demanded by [her purported] creditor" which was untrue;

(r)    "[t]hat Old Republic Default Management Services" was "a Division of Old Republic National Title Insurance Company" when no such entity exists;

(s)    that ORDMS was "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 12/10/2004" which it was not, its lack of existence notwithstanding;

(t)    that said "Deed of Trust" was "executed by KIMBERLY COX, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, A CORPORATION, as beneficiary" when it was a forged instrument;

(u)    that there were any "obligations" including "one Note(s) for the original sum of $544,000.00" which there was not;

(v)    that "[t]he beneficial interest under such Deed of trust and the obligations secured thereby are presently held by New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-02, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02 as the current beneficiary or its agent" which they were not;

(w)    that any of the entities cited in NOD 1 existed (see ¶¶ 43 *et seq*. and 48-54 herein) when they did not;

(x)    that there was any existing "Deed of Trust" as security for any "obligations" when the DOT was rescinded by operation of law in 2007 as ORNTIC knew;

(y)    that there were "ANY OTHER FEES OWING TO THE BENEFICIARY" which there were not and there was no "beneficiary;"

(z)    that there were any applicable "TERMS OF THE LOAN DOCUMENTS" which was untrue:

(aa)   that ORNTIC was a "Trustee" when it was not; and

(ab)   that ORNTIC had any right to "attempt[] to collect a debt" when no debt existed.

**CDOC2 Attached to NOD 2**

121.  The following misrepresentations were also recited in the CDOC2 by Gary Cowherd claiming to be the Loss Mitigation Specialist for NewPenn in support of, and attached to, ORNTIC's NOD 2.  CDOC2 was signed in Houston Texas on or about December 10, 2014; and wrongfully recorded and published with NOD 2 on December 19, 2014.

122.  Despite the invalidity of NOD 2, ORNTIC and Dalaysia Ramirez its purported Assistant Secretary, vicariously through (see, *Clark v. Capital Credit & Collection Servs., Supra)*, and in conspiracy with NewPenn and Gary Cowherd its purported Loss Mitigation Specialist, signed, recorded and published the following misrepresentations:

        (a)    that there was any "borrower's loan" when there was not;

        (b)    that there was any "loan default" when there was not;

        (c)    that any "right to foreclose" existed which it did not;

        (d)    that the information set forth in the CDOC was "accurate, complete and supported by competent and reliable evidence" when it was not;

        (e)    that NewPenn was "the mortgage servicer" when it was not;

        (f)    that NewPenn "exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55" when it did not; and

        (g)    that "these due diligence requirements were satisfied" when they were not.

**Re the NOTS**

123.  The NOTS (see ¶ 37 herein above) shows it was purported to have been requested to be recorded by ORDMS who as stated herein is a sham and does not exist.  The NOTS was requested when recorded, to be mailed to New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing 55 BEATTIE PLACE, SUITE 110 MAIL STOP 005 GREENVILLE, SC 29601; was dated April 28, 2015; and signed by one Dalaysia Ramirez, Trustee Sale Officer (note, Dalaysia Ramirez also claimed to be the "Assistant Secretary" for ORNTIC as further detailed in NOD 2 and ¶¶ 35 and 78-81 herein) for "Old Republic National Title Insurance Company, as Trustee 500 City Parkway West, Suite 200, Orange, CA 92868-2913 (866) 263-5802 For Sale Information Contact: Priority Posting & Publishing (714) 573-1965."

124. The DOT was deemed void by operation of law pursuant to the TILA Rescission in 2007 the remedy for which, as explained herein, accrued pursuant to *Jesinoski* in 2015. The SOT & ASSIGNMENT signed by one Abraham Bartamian on November 13, 2009 for MERS as its "Assistant Secretary" was also void because its authority was purported to have been derived from the DOT. Therefore, the NOTS was also void as a matter of law because its authority was purported to have been derived from the DOT, SOT & ASSIGNMENT, SOT 3 and NOD 2 which were void.

125. Despite the invalidity of the NOTS, ORNTIC, Dalasia Ramirez purporting to be its "Trustee Sale Officer" signed the NOTS for ORNTIC on April 28, 2015 and caused the recording of the NOTS on April 30, 2015, which included publishing the following representations which were invalid and void because as stated herein, the DOT relied on for their authority was rescinded by operation of law:

(a) that ORDMS requested the recording of SOT3;

(b) that Plaintiff was "IN DEFAULT UNDER A DEED OF TRUST DATED 12/10/2004" when she was not;

(c) that Plaintiff's Property "MAY BE SOLD AT A PUBLIC SALE" without any existing authority as claimed;

(d) that ORDMS, "a Division of Old Republic National Title Insurance Company" was or is, the "duly appointed Trustee pursuant to the Deed of Trust, Recorded 12/21/2004" when ORDMS it was not, its lack of existence notwithstanding;

(e) that the DOT referenced therein was "executed by: KIMBERLY COX, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor" which is untrue;

(f) that "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, A CORPORATION, ITS SUCCESSORS AND ASSIGNS" was the "Beneficiary" when it was not;

(g) that any "right, title and interest [was] conveyed to and [is] now held by" MERS under the DOT in the subject Property when it was not;

(h) that the undersigned was or is the "Trustee" (undersigned means "ORNTIC") when it was not;

(i)  that there was or is any "remaining principal sum of the note(s) secured by said Deed of Trust" or any of the other claims made in the last paragraph of p. 1 of the NOTS including that said "remaining principal sum...with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trust created by said Deed of Trust, to wit: [is or was] $692,994.86 (Estimated) [or otherwise]" which is entirely untrue;

(j)  that any "[a]ccrued interest and additional advances, if any, will increase this figure prior to sale" when it could not;

(j)  that there was any "lien [to be] auctioned off" which there was not since the lien was rescinded in 2007 by operation of law;

(k)  that there were any "lines senior to the lien being auctioned off" which there were not;

(l)  that any "POTENTIAL BIDDER[]" could receive "clear title to the property" which it could not;

(m) that there were or are any "outstanding liens that may exist on this property" which there were not;

(n)  that there was or is any "lender [who] may hold more than one mortgage or deed of trust on the property" which was untrue;

(o)  that there was or is any "mortgagee, beneficiary, [or] trustee" when there was not;

(p)  that "[t]he Declaration pursuant to California Civil Code, Section 2923.5(a) was fulfilled when the Notice of Default was recorded on 12/19/2014" which it was not; and

(q)  that ORNTIC had any right to "attempt[] to collect a debt" as claimed therein which it did not.

**Facts Supporting the Satisfaction of the Remaining Elements of Fraud against ORNTIC**

126.  Absent the Court's order stating Plaintiff failed to satisfy the remaining elements of Fraud against ORNTIC, Plaintiff provides the following as alleged in her FAC:

127.  ORNTIC claimed in the aforementioned recorded instruments to be the purported substituted "trustee" with the authority to collect the purported "debt" by foreclosing on Plaintiff's

Property pursuant to the power of sale provided by the DOT and the other wrongfully recorded false instruments described herein and provided as exhibits. Because the refinance transaction was void pursuant to the Rescission and any related "debt" discharged in Plaintiff's Ch. 7 Bankruptcy, ORNTIC had no such authority and is in fact, not the substituted "trustee" as it claims.

128. ORNTIC's knowledge of the falsity of its representations was acknowledged in Plaintiff's counsels' correspondence with ORNTIC and its self-proclaimed counsel David Liu, prior to the filing of this action (see ¶¶ 38, 43, and 88 *et seq*., 154 *et seq*., 158 and 174-175) in which ORNTIC was notified of its false representations and acknowledged being notified of its unauthorized acts and the reliance on those false representations recited in said recorded instruments.

129. ORNTIC's intent to induce reliance on its misrepresentations is exhibited in the wrongfully recorded and published false instruments themselves as detailed with particularity herein above. Said instruments appeared to be valid on their face and it would be reasonable to justifiably to rely on such appearance of validity, whereas in reality, the instruments are *ultra vires* and false which ORNTIC had full knowledge of, prior to it recording or causing to be recorded, the NOD 2, SOT 3 and the NOTS. Therefore, ORNTIC is jointly and severally responsible for the damages caused as a result of its actions.

**NEWPENN'S FRAUD**

**Re CDOC1 attached to NOD 1**

130. The following misrepresentations were recited in the CDOC1 (see ¶ 33 herein above) by Ray Rahimi as the Loss Mitigation Specialist for NewPenn in support of ORNTIC and as referenced in NOD 1 and attached thereto:

(a)    that there was any "borrower's loan" when there was not;

(b)    that there was any "loan default" when there was not;

(c)    that any "right to foreclose" existed which it did not;

(d)    that the information set forth in the CDOC was "accurate, complete and supported by competent and reliable evidence" which it was not;

(e)    that NewPenn was "the mortgage servicer" when it was not;

(f)     that NewPenn "exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55" which it did not; and

(g)     that "these due diligence requirements were satisfied" which they were not.

**Re SOT 2**

131.   SOT 2 (see ¶ 34 herein above) shows it was purported to have been requested to be recorded by ORDMS who as stated herein above is a sham and does not exist. SOT 2 was requested when recorded, to be mailed to New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing 55 BEATTIE PLACE, SUITE 110 MAIL STOP 005 GREENVILLE, SC 29601; was dated and notarized October 7, 2014 and purportedly signed by one "Charlene R. Butler for New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-02, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02" (hereinafter "BONYMFKABONY"); whereas the notarization claims Ms. Butler authorized to subscribe SOT 2 while known to the notary named Samantha P. Johnson as the Litigation Foreclosure Specialist of New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing.

132.   The Rescission of the DOT in 2007 rendered SOT 2 void because the authority for SOT 2 was purportedly derived from the DOT and the SOT & ASSIGNMENT each of which was rescinded by operation of law in 2007.  Therefore, the following representations were made by Charlene Butler on or about October 7, 2014 were likewise invalid and void as a matter of law:

(a)     that ORDMS requested the recording of SOT2;

(b)     that MERS "AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, A CORPORATION was the original Beneficiary under that certain Deed of Trust dated 12/10/2004 and recorded on 12/21/2004" which it was not;

(c)     that "the undersigned is the present Beneficiary under said Deed of Trust" (the "undersigned" was referring to BONYMFKABONY) which it was not;

(d)     that "the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor trustee, thereunder, in the manner under said

Deed of Trust" (the "undersigned" was referring to BONYMFKABONY) which was represented without authority;

(e) that there was any "manner in said Deed of Trust provided" which there was not;

(f) that ORDMS was a division of ORNTIC which it was not; and

(g) that ORDMS was substituted as "Trustee under said Deed of Trust" when it was not.

**Re CDOC2 Attached to NOD 2**

133. The following representations were recited in the CDOC2 which were untrue (see ¶ 35 herein above) by Gary Cowherd in Houston Texas on or about December 10, 2014 as the Loss Mitigation Specialist for NewPenn in support of ORNTIC and as referenced in NOD 1 and attached thereto:

(a) that there was any "borrower's loan" which there was not;

(b) that there was any "loan default" when there was not;

(c) that any "right to foreclose" existed which it did not;

(d) that the information set forth in the CDOC was "accurate, complete and supported by competent and reliable evidence" which it was not

(e) that NewPenn was "the mortgage servicer" when it was not;

(f) that NewPenn "exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55" which it did not; and

(g) that "these due diligence requirements were satisfied" when they were not.

**Re SOT 3**

134. SOT 3 (see ¶ 36 herein above) shows it was purported to have been requested to be recorded by ORDMS who as stated herein above is a sham and does not exist. SOT 3 was requested when recorded, to be mailed to New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing 55 BEATTIE PLACE, SUITE 110 MAIL STOP 005 GREENVILLE, SC 29601; was dated and notarized October 7, 2014 and purportedly signed by one "Charlene R. Butler for New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing as servicer for, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-02, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02" (hereinafter

"BONYMFKABONY"); whereas the notarization claims Ms. Butler authorized to subscribe SOT 3 while known to the notary named Samantha P. Johnson as the Litigation Foreclosure Specialist of New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing.

135. The Rescission of the DOT in 2007 rendered SOT 2 void because the authority for SOT 2 was purportedly derived from the DOT and the SOT & ASSIGNMENT each of which was rescinded by operation of law in 2007. Therefore, the following representations were made by Charlene Butler on or about October 7, 2014:

(a) that ORDMS requested the recording of SOT3;

(b) that MERS "AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, A CORPORATION was the original Beneficiary under that certain Deed of Trust dated 12/10/2004 and recorded on 12/21/2004" when it was not;

(c) that "the undersigned is the present Beneficiary under said Deed of Trust" (the "undersigned" was referring to BONYMFKABONY) when it was not;

(d) that "the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor trustee, thereunder, in the manner under said Deed of Trust" (the "undersigned" was referring to BONYMFKABONY) which it had no authority to do;

(e) that there was any "manner in said Deed of Trust provided" when the DOT was rescinded by operation of law in 2007; and

(f) that ORNTIC was substituted as "Trustee under said Deed of Trust" when it was not.

136. NewPenn claimed in the aforementioned instruments s to be the purported "servicer" with the authority to direct ORNTIC to collect the purported "debt" by foreclosing on Plaintiff's Property pursuant to the power of sale provided in the DOT and the other recorded instruments described herein and provided as exhibits. Because the refinance transaction was void pursuant to the Rescission and any purported "debt" discharged in Plaintiff's Ch. 7 Bankruptcy, NewPenn had no such authority and is in fact not, the "servicer" as it claims.

137. NewPenn's knowledge of the falsity of its representations was acknowledged in correspondence between Plaintiff's Counsel and NewPenn and its purported counsel.

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 60 of 102

138. NewPenn's intent to induce reliance on its misrepresentations is exhibited in the wrongfully recorded and published false instruments themselves as detailed with particularity herein above. Said instruments appear valid on their face and it would be reasonable to justifiably rely on such appearance of validity, whereas in reality, the instruments are *ultra vires* and false which NewPenn had full knowledge of, prior to its recording or causing to be recorded by directing ORNTIC to do so, NOD 2, SOT 3 and the NOTS. Therefore, NewPenn is jointly and severally responsible for the damages caused as a result of its fraudulent acts.

**Damages - Actual, Compensatory and Punitive**

139. As a result of ORNTIC's and NewPenn's fraudulent acts, jointly, severally and in conspiracy with each other as detailed herein, Plaintiff has suffered economic damages in an amount to be determined according to proof at trial for paying payments that were not due, which ORNTIC and NewPenn rely on for their claims of rights to foreclose on Plaintiff's Property and amount wrongfully and maliciously allege Plaintiff owes, for the diminution of the value of her Property as well as the damages related to rendering the Title to Plaintiff's Property unmarketable and unvendible; for costs and attorneys' fees attributable to this litigation; Plaintiff's loss and reduction in rental income all caused *sine quoa non* by Defendants. Plaintiff also seeks compensatory, exemplary and punitive damages for the sake of example and by way of punishing defendants for their fraud and malice intended to cause injury to Plaintiff that was and continues to be despicable with willful in conscious disregard for Plaintiff's rights (see, *inter alia*, Cal. Civ. Code §§ 3294 *et seq*. and 3333). As stated herein above regarding the correspondence between Plaintiff's attorney and ORNTIC, NewPenn and their purported attorneys, Defendants knew before they recorded or caused to be recorded the NOTS that the Rescission was effective in 2007 pursuant to Jesinoski in 2015 and recorded the NOTS anyway with malice in reckless disregard for Plaintiff's rights.

140. In addition to the foregoing, Plaintiff demands the relief sought pursuant to Fed. R. Civ. Proc., Rule 8(a)(3) as further specified herein below.

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 61 of 102

**COUNT 4**

**VIOLATION OF THE FDCPA AND ROSENTHAL FDCPA**

(Against ORNTIC and NewPenn)

141. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

142. ORNTIC and NewPenn are each, in conspiracy with each other, wrongfully attempting to collect a purported debt neither owns. The purported debt was rendered unsecured pursuant to the Rescission in 2007 once the claim for relief accrued in 2015 pursuant to *Jesinoski*. ORNTIC's and NewPenn's acts complained of herein occurred not only post-petition but post-discharge and closing of Plaintiff's bankruptcy in 2012 and continue to this day even after each defendant was notified of their lack of standing to do so.

**Purpose of FDCPA and Rosenthal**

143. Pursuant to 15 U.S.C. § 1692, the purpose of the FDCPA in relevant part, is "to eliminate abusive debt collection practices by debt collectors...and to promote consistent State action to protect consumers against debt collection abuses." Pursuant to Cal. Civ. Code § 1788.1(a)(2)(b), the purpose of Rosenthal in relevant part, is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." The Rosenthal Fair Debt Collection Practices Act ( Cal. Civ. Code §§ 1788-1788.33 "Rosenthal") "regulates the collection of 'consumer debts,' which are defined as transactions by which 'property, services or money is acquired on credit . . . primarily for personal, family, or household purposes. Cal. Civ. Code § 1788.2(e)-(f)." *Quinlan v. Citimortgage, Inc*. (E.D. Cal. Nov. 2, 2011) 2011 U.S. Dist. LEXIS 126714, at 6. While providing its own standards, Rosenthal also provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the FDCPA. See Cal. Civ. Code § 1788.17. One of the incorporated FDCPA provisions prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." See 15 U.S.C. § 1692e. While merely foreclosing on a deed of trust is not generally sufficient to state a claim under Rosenthal or the FDCPA, where as in this instant case claims arise out of debt collection activities "beyond the scope of the ordinary foreclosure process," remedy is provided under Rosenthal. See

*Reyes v. Wells Fargo Bank, N.A.* (N.D. Cal. Jan. 3, 2011) 2011 Dist. LEXIS 2235, at 61 citing *Walters v. Fidelity Mortgage of California, Inc*. (E.D. Cal. Aug. 4, 2010) 730 F.Supp.2d 1185).

**Applicable Definitions under FDCPA and Rosenthal - ORNTIC and NewPenn are Debt Collectors**

144. The following definitions apply, *inter alia*, to the facts of this case pursuant to the FDCPA and Rosenthal in relevant part:

(a) Plaintiff is a consumer and a natural person as defined in 15 U.S.C. 1692a(3) and Cal. Civ. Code §§ 1788.2(e)-(h).

(b) The debt purported to be evidenced by the Note means money, property or their equivalent which was alleged to be due or owning from a natural person to someone else, arising out of a transaction primarily used for personal, family or household purposes as defined in 15 U.S.C. 1692a(5) and Cal. Civ. Code § 1788.2(d) and (f). Because Defendants allege Plaintiff owes $692,994.86 pursuant to the NOTS, Defendants are therefore attempting to collect a "debt" as defined by the FDCPA and Rosenthal.

(c) The term "debt collection means "any act or practice in connection with the collection of consumer debts as defined in Cal. Civ. Code § 1788.2(b).

(d) No defendant is a "creditor" as defined in 15 U.S.C. § 1602(g) (also see ¶¶ 12, 20, 26, 27, 61, and 67 herein above) and each has affirmatively denied being the "creditor." However, ORNTIC and NewPenn, claim creditor status as specifically defined by the FDCPA and Rosenthal under 15 U.S.C. 1692a(4) and Cal. Civ. Code § 1788.2(i), by attempting to foreclose on Plaintiff's Property and collect the purported "debt" each wrongfully alleges is due or owed by Plaintiff. Therefore, ORNTIC and NewPenn are debt collectors as defined in 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c) and are attempting to collect a debt that does not exist they claim is in default for a third party (BONYMTrustee) that does not exist pursuant to authority they do not possess.

(e) A debt collector under Rosenthal is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c) and pursuant to 15 U.S.C. § 1692a(6) means, inter alia, "...any person who uses any instrumentality of interstate commerce or the mails in any

business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owned or due another." Both ORNTIC and NewPenn are clearly acting as debt collectors under these legal definitions for which no exclusions pursuant to 15 U.S.C. § 1692a(6)(A)-(F) of the FDCPA apply. Each Defendant is attempting to not only to collect a debt they do not own but to collect a debt that is not owed at all because the purported debt was rendered unsecured pursuant to the Rescission in 2007 and discharged in Plaintiff's bankruptcy when it closed in 2012 once the claim for relief accrued pursuant to Jesinoski in 2015.

145. Each of the terms described herein above applies to the transaction the subject of this action pursuant to the FDCPA and Rosenthal, which means ORNTIC and NewPenn were acting as debt collectors by attempting to collect the purported debt for a third party, which was unsecured pursuant to the Rescission discharged in Plaintiff's Ch. 7 Bankruptcy and neither were acting in the authorized capacity each claims. Even this very Court recognized that because Tran for NewPenn (which means also ORNTIC since NewPenn substituted ORNTIC as the "Trustee," the invalid SOT 2 and 3 notwithstanding) claimed that her clients took over after "the mortgage was in default" which means NewPenn (and therefore ORNTIC) are debt collectors (see Transcript 19:21-20:20).

146. While the California state Legislature essentially exempted "trustees" under certain circumstances from liability pursuant to Rosenthal when conducting foreclosure activities under a deed of trust [Cal. Civ. Code § 2924(b)], such exemption does not apply to either ORNTIC or NewPenn because the DOT relied on for such authority is void pursuant to the Rescission. Therefore neither ORNTIC nor NewPenn are "trustees" pursuant Rosenthal and possess any immunity for their liability.

**ORNTIC's and NewPenn's Claims are barred for Making False, Deceptive and Misleading Representations**

147. A debt collector is barred from making false, deceptive or misleading representations in connection with the collection of any debts, and from using unfair or unconscionable means to collect a debt (Civ. Code, § 1788.17; and 15 U.S.C. §§ 1692e, and 1692f ). Falsely telling Plaintiff she owes a debt she does not, is actionable under Rosenthal and the FDCPA (See *Irwin v. Mascott* (N.D.Cal. 2000) 112 F.Supp.2d 937, 954-955; *Goins v. JBC Associates, P.C.* (D.Conn. 2005) 352 F.Supp.2d 262,

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 64 of 102

269). Both ORNTIC and NewPenn have falsely stated pursuant to their respective correspondence with Plaintiff's attorney identified herein, and in SOT 2, NOD 2, SOT 3 and in the NOTS that Plaintiff owes a debt she does not in fact owe.

148. Plaintiff's dispute is material with respect to the (lack of) honesty and fairness of ORNTIC's and NewPenn's debt collection efforts. ORNTIC's and NewPenn's collection demands were and remain false, deceptive, and misrepresent that Plaintiff owes a debt she does not. ORNTIC and NewPenn were each notified by Plaintiff's counsel in writing pursuant to a letters dated January 14, and February 13, 2015 that the purported "lien" and "debt" were each rescinded by operation of law and discharged in Plaintiff's Bankruptcy respectively but ORNTIC and NewPenn continued to record or caused to be recorded the NOTS on April 30, 2015 in spite of this knowledge causing the damages complained of herein and necessitating the relief demanded. It should not have required for Plaintiff to file this lawsuit to resolve this dispute.

**Re the Court's MTD Order and Plaintiff's Unconscionability Allegation**

149. The Court in its MTD Order primarily claimed that Plaintiff's FDCPA and Rosenthal act violations belonged to the [bankruptcy] estate which as stated herein, was erroneous because there was no claim for relief available in the 9th Circuit for Plaintiff's TILA Rescission that could have been scheduled as belonging to the estate in 2010 until such assertion accrued pursuant to *Jesinoski* in 2015 after the case closed. The Court eluded to Plaintiff's FAC in which Plaintiff alleged that any remaining debt was discharged in Plaintiff's chapter 7 bankruptcy (in fn. 10 of the MTD Order); and that Plaintiff's allegations of Rosenthal and FDCPA violations predicated on Defendants' continued attempts to foreclose on the Property after the bankruptcy discharge in 2012 and Defendants' failing to act "in the authorized capacity each claims" "[came] close" to "plead[ing] around the statutory exemptions on the basis of the 2007 rescission falling back on its justification for dismissing this claim for relief because any such claim would belong to the bankruptcy estate which as explained herein above, was not the case.

**Re Unconscionability of ORNTIC's and NewPenn's Acts**

150. Regarding Plaintiff's unconscionability allegation, the Court agreed with NewPenn that "Plaintiff fail[ed] to...identify which Defendant 'falsely t[old] Plaintiff she owes a debt she does not.'"

The Court also stated in the MTD Order that Plaintiff failed to "identify the 'nonjudicial action'" which ORNTIC and NewPenn took "to effect dispossessing Plaintiff of her property." This statement was taken out of context as further explained herein below:

**ORNTIC's False Allegations that Plaintiff Owed a Debt she does not**

(a) As stated*, inter alia,* in ¶¶ 90, 114 *et seq*. and 117 herein above, ORNTIC is identified as having falsely claimed Plaintiff owes a debt she does not, by Linda Mayes as the Assistant Secretary for ONTIC in NOD 1; by Ray Rahimi in CDOC1 claiming to be the Loss Mitigation Specialist for NewPenn in support of, and attached to, ORNTIC's NOD 1 as identified in ¶¶ 115 and 116 *et seq*.; and by Dalaysia Ramirez as the Assistant Secretary for ORNTIC as detailed in ¶ 118, 120 *et seq*., 123 and 125 *et seq*. herein above.

**Re NewPenn's False Allegations that Plaintiff Owed a Debt she does not**

(b) As stated*, inter alia,* in ¶¶ 90, 115, 116 *et seq*. and 117 herein above, NewPenn is identified as having falsely claimed Plaintiff owes a debt she does not, by Ray Rahimi as a purported Loss Mitigation Specialist for NewPenn in CDOC1; by Gary Cowherd as a purported Loss Mitigation Specialist for NewPenn in NOD 2 and CDOC2 as detailed in ¶ 118 herein above; and by Dalaysia Ramirez the Assistant Secretary, vicariously through (see, *Clark v. Capital Credit & Collection Servs., Supra)*, and in conspiracy with NewPenn and Gary Cowherd as detailed in ¶ 122 *et seq*., 123 and 125 *et seq*. herein above.

**Re the Identification of the Nonjudicial Action ORNTIC and NewPenn took in an Attempt to Dispossess Plaintiff of her Property**

151. The non-judicial action ORNTIC and NewPenn have taken in an attempt to dispose of Plaintiff's property and collect a debt that they do not own and is not owed, includes the wrongfully recording, publishing without privilege and mailing of the false instruments identified and detailed herein including, *inter alia*, the NOD 1, SOT 2, NOD 2, SOT 3 and the NOTS.

**FDCPA and Rosenthal Violations**

152. All previous facts and allegations are incorporated by this reference as though fully set forth hereat.

153.  The Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq*. "FDCPA") and California's Rosenthal Debt Collection Practices Act (Cal. Civ. Code § 1788 *et seq*. "Rosenthal") apply to this action for the following additional reasons:

154.  ORNTIC and NewPenn have each violated 15 U.S.C. §§ 1692e(2)(A) and 1692e(10) of the FDCPA and Cal. Civ. Code §§ 1788.1(a)(2) and (3); 1788.10(a), (e) and (f); 1788.11(c) and (e); 1788.13(e), (i) and (j); 1788.14(a), (b) and (c); and 1788.17 of Rosenthal by using false, deceptive and misleading representations and (other including criminal) means in connection with attempts to collect an alleged "debt" that does not exist.  These misleading representations include, *inter alia* the following:

**By ORNTIC**

(a)    In a facsimile and letter dated January 12, 2015 from Liu ("ORNTIC Letter1") claiming to be the attorney for and on behalf of ORNTIC and the non-existent ORDMS; Liu falsely claimed that: (1) "the foreclosure process is proper;" (2) that ORDMS "...was properly substituted  in as the foreclosure trustee by Shellpoint on December 10, 2014;" and that said substitution was "...permitted under California Civil Code § 2934a(a)(1);" and (3) that ORDMS' recording of "...a notice of default against the subject property on December 19, 2014 [was] permitted by California Civil Code § 2934a(b), (d);"

(b)    In a facsimile and letter dated January 22, 2015 from Liu ("ORNTIC Letter2") claiming once again to be the attorney for and on behalf of ORNTIC and the non-existent ORDMS; Liu falsely claimed that: (1) "[b]e assured that ORDMS does exist and it is a division of Old Republic National title Insurance Company;" (2) that "...the foreclosure process was and is proper;" and (3) that Plaintiff's position that NewPenn "has no right to foreclose" was unsupported; and

(c)    In a facsimile and letter dated February 20, 2015 from Liu ("ORNTIC Letter3") now claiming to be not only the attorney for ORNTIC and the non-existent ORDMS but now somehow additionally representing an entirely new entity not sued by Plaintiff in this action, "Old Republic Diversified Services, Inc." ("ORDSI") Liu falsely claimed re the purported "...subject loan was rescinded and/or discharged by a bankruptcy order" as asserted in the

February 13, 2015 letter to NewPenn which also included a copy of the Rescission: (1) that "Shellpoint" is the "current servicer;" and (2) that "Old Republic" claimed by Liu to be collectively ORNTIC, ORDMS and ORDIS was "acting as the foreclosure trustee for the subject loan."

**By NewPenn**

(a) In the letter dated February 6, 2015 to Plaintiff's attorney purported to be from one L. Hampton ("NewPennLetter"), which falsely stated that: (1) "Bank of New York as Trustee for CWMBS 2005-02 ("BONY") is currently the owner of the account number ending in 3668" when there is no such account or related debt; and there is no entity named "Bank of New York" (see ¶ 37 above); (2) that "Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on behalf of BONY, on or about March 1, 2014;" (3) that "the balance owed is $658,099.62, which includes interest, fees, and negative escrow;" (4) that there were "...permissible charges [that] can cause the loan balance to vary from day to day;" (5) that "The current owner of this loan is BONY and their address is: 101 Barclay St. 8W New York, NY 10286;" (6) that "This loan originated with America's Wholesale Lender on December 10, 2004, for an Adjustable Rate Note;" (7) that "The original loan was for $544,000.00 at an initial rate of 1.000% with initial payments of $1,749.72. The interest rate may change on the first day of February 2005 and on that day every month thereafter;" (8) that there was a "...maturity date of January 1, 2035;" (8) that "...the loan was transferred to Shellpoint;" (9) that there was "...a principal balance of $581.688.46;" (9) that "..the loan is past due and has been since December 1, 2008;" (10) that "Bank of America, N.A. is the *Master Servicer* and Shellpoint is the *Sub-Servicer* of this loan;" (11) that the "...Pooling and Servicing Agreement...contains proprietary information" while remaining "...a matter of public record;" (12) that NewPenn was "servicing the loan in accordance with the original agreement and all applicable laws and regulations;" (13) that "[t]he mortgage loan is in default for non-payment...;" (14) that "[a]s the *servicer*, Shellpoint does not have knowledge of the loan closing or any other aspects of the loan unrelated to the *servicing*;" (15) that there was an "original lender or closing agent;" and (16) that NewPenn "is not a debt collector" as stated before this Court in its Motion to Dismiss, Doc

53 filed October 20, 2015 pgs.2 of 25:22-25, 9 of 25:13-16, and 17 of 25:9-23; when admitted by L. Hampton in this Letter that "This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector...[t]his is an attempt to collect a debt...[t]his communication is from a debt collector;" and further NewPenn admitted that as an admitted debt collector, NewPenn was not allowed to "use false or misleading statements;"

(b) In the letter dated March 20, 2015 to Plaintiff's attorney purported to be from one L. Hampton ("NewPennLetter2"), which falsely stated that: (1) "Bank of New York as Trustee for CWMBS 2005-02 ("BONY") currently owns the above referenced loan" when as stated herein above there is no such loan; and there is no entity named "Bank of New York;" (2) that "Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on behalf of the owner referenced above, on or about March 1, 2014;" (3) that "the mortgage loan is in default for non-payment;" (4) that "[t]he loan originated in December 2004" while also claiming "Shellpoint does not have knowledge of the loan closing or any other aspects of the loan unrelated to the *servicing*;" (5) while on one hand admitting on one hand that "Shellpoint's records indicate the loan was discharged through a Chapter 7 Bankruptcy in 2010. Therefore, Shellpoint is not attempting to collect the debt..." then in the other hand in the same Letter immediately following stating that it had the ability to "service the loan according to the original agreement..." and that "This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector. This communication is from a debt collector;" and (6) admitting that NewPenn as a debt collector was now allowed to "...use false or misleading statements..." which it certainly did; and

(c) In the letter dated May 26, 2015 to Plaintiff's attorney purported to be from one Loran Kaufmann ("NewPennLetter3"), which falsely stated that: (1) "Bank of New York Mellon FKA as the Bank of New York as Trustee for the Certificate Holders Series CWMBS 2005-02 is currently the owner of the account number ending in 3668" when there is no such loan and none of the entities named as the "owner of the account" exist (see ¶¶ 38, 43 *et seq*., and 88 *et seq*. herein above); (2) that "Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on behalf of the owner referenced above, on or about March 1, 2015;" (3) that "...the

unpaid principal balance is $518,688.46;" that "there are "...allowable charges [that] may cause the loan's balance to vary daily;" (4) that there was an "...outstanding past due balance that was present at the time of the referral...to a foreclosure attorney;" (5) that "...this loan is due for the December 1, 2008 through May 1, 2015 mortgage payments and carries a total amount due of $231,603.67. This amount includes $226,678.31 in past due payments, $1,268.83 in Late Charges, and $3,655.00 in other outstanding fees and costs;" (6) that "...this loan is in a foreclosure status and may be subject to additional attorney fees and costs as a result that aren't indicated here;" (7) that "Shellpoint is servicing the loan on the behalf of "The Bank of New York Mellon FKA The Bank of New York as trustee for CWMBS 2005-02;" while admitting that "Bank of New York Mellon is not the investor but rather a Trustee and does not physically own the loan or the property;" (8) that NewPenn "...is servicing the loan pursuant to the original agreement and applicable state laws and federal regulations;" (9) NewPennLetter3 "is an attempt to collect a debt...from a debt collector" for a debt (a debt that did not exist); (10) that NewPenn had the right "...of possible enforcement of the lien against the collateral property;" and (11) that "...a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency;" (12) that there was any such "...credit obligation;"

155. ORNTIC and NewPenn have each violated 15 U.S.C. § 1692f(6)(A) by using unconscionable means in an attempt to collect a (purported) debt by taking nonjudicial action in attempts to effect dispossessing Plaintiff of her Property without lawful authority.

**Further Rosenthal Violations**

156. ORNTIC and NewPenn have each violated Cal. Civ. Code § 1788 *et seq*., by using false, deceptive and misleading representations and means in connection with attempts to collect the alleged "debt" that does not exist. These misleading representations include, *inter alia*:

(a) ORNTIC's violation of Cal. Civ. Code § 1788.13(a) by communicating to Plaintiff by mailing SOT 2, SOT3 and the NOTS in the name of ORDMS who does not exist when it was actually ORNTIC attempting to collect the purported "debt" in the name of ORDMS in an attempt to avoid liability for its actions;

     (b)    NewPenn's violation of Cal. Civ. Code § 1788.13(e) by claiming in NOD 2 mailed to Plaintiff and recorded in the county records that the purported "debt" would be increased by charges that were not legally added to an existing obligation (any such obligation having been rendered unsecured by operation of law in 2007 and subsequently discharged in Plaintiff's Bankruptcy in 2012);

     (c)    ORNTIC's and NewPenn's respective, collective conspiratorial (between the two) and several violations of Cal. Civ. Code § 1788.13(e) by claiming in the NOTS mailed to Plaintiff and recorded in the county records that the purported "debt" included charges that were not legally added to an existing obligation (any such obligation having been rendered unsecured by operation of law pursuant to the Rescission in 2007 and subsequently discharged in Plaintiff's Bankruptcy as an unsecured debt in 2012);

     (d)    ORNTIC's and NewPenn's respective, collective conspiratorial (between the two) and several violations of Cal. Civ. Code § 1788.14(b) by attempting to collect from Plaintiff fees charged for services rendered or other expenses incurred in the collection of a consumer debt by foreclosing on Plaintiff's Property or collecting the enumerated debt that no longer existed and therefore not permitted by law;

     (e)    ORNTIC's and NewPenn's respective, collective conspiratorial (between the two) and several violations of Cal. Civ. Code § 1788.17 for failing to comply with 15 U.S.C. §§ by claiming in the NOTS mailed to Plaintiff and recorded in the county records that the purported "debt" included charges that were not legally added to an existing obligation (any such obligation having been rendered unsecured by operation of law pursuant to the Rescission in 2007 and subsequently discharged in Plaintiff's Bankruptcy as an unsecured debt in 2012); claiming in the NOTS mailed to Plaintiff and recorded in the county records that the purported "debt" included charges that were not legally added to an existing obligation (any such obligation having been rendered unsecured by operation of law pursuant to the Rescission in 2007 and subsequently discharged in Plaintiff's Bankruptcy as an unsecured debt in 2012);

157.  As a result of ORNTIC's and NewPenn's acts, Plaintiff has suffered economic damages in an amount to be determined according to proof at trial for paying payments that were not due,

which ORNTIC and NewPenn rely on for their claims of rights to foreclose on Plaintiff's Property pursuant to the recitals in the NOTS. ORNTIC and NewPenn are also liable to Plaintiff for the diminution of the value of her Property as well as the damages related to rendering the Title to Plaintiff's Property unmarketable and unvendible; and are each jointly and severally liable for statutory damages and attorney fees pursuant to Rosenthal and the FDCPA *sine quoa non* Defendants. In addition to the foregoing, Plaintiff demands the relief sought pursuant to Fed. R. Civ. Proc., Rule 8(a)(3) as further specified herein below.

158. The foregoing violations of the FDCPA and Rosenthal are notwithstanding the multiple admissions and false claims made in and therefore by ORNTIC's purported attorney's (ORNTIC's actual lack of an appearance notwithstanding and misrepresentations by Liu and Steele that each did or currently does represent ORNTIC, which on information and belief, Plaintiff contends they do not) and NewPenn's filed Motions to Dismiss Plaintiff's First Amended Complaint Docs 51 and 53 respectively and their Replies to Plaintiff's Opposition to Motions to Dismiss Docs 70 and 68 respectively.

**Damages**

159. Accordingly, for the reasons stated herein Plaintiff seeks relief in the form of injunctive relief, statutory damages, attorneys' fees and costs according to proof at trial and such further relief identified pursuant to Fed. R. Civ. Proc., Rule 8(a)(3) as further specified herein below.

**COUNT 5**

**VIOLATION OF THE CALIFORNIA UNFAIR PRACTICES ACT**

(Against ORNTIC, NewPenn and MERS)

160. Plaintiff incorporates by reference the allegations and facts stated in each of the preceding paragraphs as though fully set forth hereat.

**The Court's MTD Order Erroneously Claimed Plaintiff's UPA Claims Existed Pre-Petition**

161. The Court's claim in the MTD Order that Plaintiff's Unfair Practices Act ("UPA") claims "existed pre-petition and belong to the estate" is untrue. All Defendants' acts complained of herein occurred not only post-petition but post-discharge and closing of Plaintiff's bankruptcy in 2012. The only irrelevant exception is MERS' original wrongful recording of the false SOT & Assignment in

2009; however, pursuant to the Rescission in 2007, the SOT & Assignment was invalid and void as a matter of law pursuant to the Rescission in 2007 but Plaintiff's right to assert the Rescission did not accrue until *Jesinoski* in 2015 which means there was no pre-petition claim for relief for MERS recording of the SOT & Assignment either. Further, the SOT & Assignment remains on the record clouding and disparaging the title to Plaintiff's Property and is therefore a continuing violation, especially in light of MERS' willful and malicious refusal to rescind the SOT & Assignment having the knowledge of its invalidity.

**The Court Ruled Plaintiff had Standing to bring this Count**

162. As ruled by the Court in the MTD Order, Defendants' argument that Plaintiff fails to have standing to bring this Count because she failed to allege she lost money or property as required by Cal. Bus. & Prof. Code § 17204 fails because, pursuant to *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 325, the two-fold showing to establish standing was satisfied by Plaintiff showing she suffered direct injury and lost money or property as a result of the alleged unfair competition. The Court further ruled that in considering *Kwikset*, *Id.* at 323, Plaintiff's claim of the diminution of the value of her Property was (and therefore remains) sufficient to allege economic injury from unfair competition.

163. The Court also ruled that Plaintiff's allegation that Defendants' misconduct represents an ongoing violation is sufficient against claims that the UPA only applies to business "practices" requiring "at a minimum, ongoing conduct" citing *Mangini v. Aerojet-Gen. Corp*. (1991) 230 Cal.App. 3d 1125, 1156.

**The Court Ruled Plaintiff failed to allege which Defendant is Responsible for Which Damages**

164. Pursuant to the Court being convinced that Plaintiff "lump[ed]" all Defendants together without identifying which is responsible for her alleged injuries and how; and, that a UPA action cannot be alleged on any claim of vicarious liability. Therefore Plaintiff provides the following amended allegations with expanded particularity.

**Defendants Predicate Violations**

165. The following allegations and facts are notwithstanding, that: (a) pursuant to the Rescission of the transaction and "loan" was void by operation of law in 2007; and (b) that Plaintiff

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 73 of 102

may not have private rights of action against Defendants for their criminal violations which are none-the-less predicate violations as applicable under California's Unfair Practices Act.

163. Cal. Bus. & Prof. Code § 17000 et seq., is known as the Unfair Practices Act ("UPA").

"Any person...may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages" (Cal. Bus. & Prof. Code § 17070).

" ...[I]f the court shall find, in any such action, that any defendant therein is violating, or has violated, this chapter, then the court shall enjoin the defendant from doing all acts which are prohibited by the section, or sections, of which any provision thereof is being violated, or has been violated, by defendant" (Cal. Bus. & Prof. Code § 17078).

" The court may, in its discretion, include any injunction against a violation of this chapter such other restraint as it may deem expedient in order to deter the defendant from, and insure against, his committing a future violation of this chapter" (Cal. Bus. & Prof. Code § 17079).

" In any action under this chapter, it is not necessary to allege or prove actual damages or the threat thereof, or actual injury or the threat thereof, or actual injury or the threat thereof, to the plaintiff. But, in addition to injunctive relief, any plaintiff in any such action shall be entitled to recover three times the amount of actual damages, if any, sustained by the plaintiff...resulting from a violation of this chapter" (Cal. Bus. & Prof. Code § 17082).

" Any person, who, either as director, officer or agent of any firm or corporation or as agent of any person, violating the provisions of this chapter, assists or aids, directly or indirectly, in such violation is responsible therefor equally with the person, firm or corporation for which he acts" (Cal. Bus. & Prof. Code § 17095).

" As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Pat 3 of Division 7 of the Business and Professions Code" (Cal. Bus. & Prof. Code § 17200).

" Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition" (Cal. Bus. & Prof. Code § 17203).

" Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this State" (Cal. Bus. & Prof. Code § 17205).

" The court shall impose a civil penalty for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to,

the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth" (Cal. Bus. & Prof. Code § 17206(b)).

166. Defendants' conduct complained of herein was committed within the last four (4) years and continues to accrue due to Defendants' on-going acts (Cal. Bus. & Prof. Code § 17208 also see *Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185).

167. Cal. Bus. & Prof. Code § 17200 provides three different violations that can be alleged which include the so-called "unlawful"; "unfair" and "fraudulent" business acts or "prongs" related to a business or corporation such as these Defendants or any employee thereof, which are as specified pursuant to Cal. Bus. & Prof. Code § 17500 unlawful, to wit:

> " It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

168. "[Because] section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1496; also see *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

169. Unfair competition pursuant to Bus. & Prof. Code § 17200 *et seq*. ("UCL"), incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co*. (9th Cir. 2000) 225 F.3d 1042, 1048 and a violation of almost any federal, state, or local law may serve as a basis for a claim under the UCL. See *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838-839. A business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law" *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 827 which would mean therefore, violations of law where no private right of action applies as in this instant case could be deemed a violation of the UCL. See *Rose v. Bank of America, N.A.* (Cal. 2013) 57 Cal.4th 390, 396-397; also see *Cell-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co, supra,* 20 Cal.4th at p. 180.

170. A business practice or act that does not violate a statute may also violate the UCL because the UCL proscribes "unfair" and "fraudulent" business practices. *Hambrick v. Healthcare Partners Medical Group, Inc*. 2 (Cal. App. 2d Dist. 2015) 38 Cal. App.4th 124 (internal citations omitted.)

171. Defendants' conduct was unlawful, unfair and fraudulent pursuant to the UCL, based, but not thereby limited upon, the authority cited above and the following predicate violations:

**ORNTIC's "Unlawful Prong" Predicate Violations**

172. ORNTIC's predicate violations include all previous facts and allegations which are incorporated by this reference as though fully set forth hereat.

173. As stated herein, ORDMS, pursuant to the following recorded instruments, violated Cal. Pen. Code § 532(f)(a)(4) which is mortgage fraud, by wrongfully recording the following false instruments ORNTIC knew contained deliberate misstatements and misrepresentations including:

(a) the NOD 1 recorded on 10/28/2014, signed by Linda Mayes on 10/21/2014 ORDMS' purported Assistant Secretary;

(b) the NOD 2 recorded on 12/18/2014, signed by Dalaysia Ramirez on 12/18/2014 ORDMS' purported Assistant Secretary;

(c) the NOTS signed by Dalaysia Ramirez as ORDMS' purported Trustee Sale Officer; in civil conspiracy with NewPenn and MERS ( collectively with ORNTIC, "Malfeasors"), as evidenced by:

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 76 of 102

(d) the CDOC 1 recorded on 10/28/2014, signed by Ray Rahimi on 10/10/2014, as NewPenn's purported Loss Mitigation Specialist;

(e) the SOT 2 recorded on 10/28/2014, signed by Charlene R. Butler on 10/07/2014, as NewPenn's purported Litigation Foreclosure Specialist;

(f) the CDOC 2 recorded on 12/19/2014, signed by Gary Cowherd on 12/10/2014, as NewPenn's purported Loss Mitigation Specialist;

(g) the SOT 3 recorded on 12/19/2014, signed by Charlene R. Butler on 12/10/2014, as NewPenn's purported Litigation Foreclosure Specialist;

(h) the SOT & Assignment recorded on 12/02/2009, signed by Abraham Bartamian on 11/13/2009 as MERS' Assistant Secretary; and

(i) pursuant to an online search at https://www.mersinc.org/about-us/member-search which shows that NewPenn is a MERS Member.

174. ORNTIC was notified by Plaintiff's counsel of the misstatements and misrepresentations contained in the recorded instruments referenced above but ORNTIC through its purported counsel Liu, refused to acknowledge the invalidity of these instruments and rather than rescind the wrongfully recorded false NOD 1 and NOD 2, chose to proceeded to record the NOTS without any further attempts to confirm the accuracy and completeness of the information or to ensure that ORNTIC reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information, in further violation, *inter alia*, of Cal. Civ. Code § 2924.17(a) and (b) respectively.

175. ORNTIC violated Cal. Pen. Code § 115(a) for knowingly offering or causing to be offered, false instruments to be recorded in the Santa Cruz County Recorder's Office, including but not limited to the NOD 1, NOT 2 and NOTS which is considered recording fraud and a felony under Cal. Pen. Code § 115(b). Having full knowledge of the falsity of these instruments and that recording such was a felony, Liu violated 18 U.S.C. § 4 for Misprision of Felony as has ORDMS' purported attorney Steele, ORDMS' lack of existence notwithstanding.

176. ORNTIC is responsible for violations of the Real Estate Settlement Procedures Act ("RESPA") for failing to disclose the real "Lender." This was a violation of Cal. Fin. Code § 50505 *et seq.*;

"Under Business and Professions Code section 17200, **any unlawful business act constitutes unfair competition**, and **a private cause of action can be based on the unlawful act *<u>even if the predicate law does not provide for a private cause of action</u>***. (*Summit Tech. v. High-Line Med. Instruments Co*. (C.D.Cal. 1996) 933 F. Supp. 918, 942-943.) A violation of RESPA or Regulation X is made unlawful under California law by Fin. C. § 50505." (Emphasis added; see, *Washington Mutual Bank v. Superior Court* (1999) 75 Cal.App.4th 773, 786.)

177. ORNTIC violated Cal. Bus & Prof. Code § 17500 by attempting:

(a) to dispose of Plaintiff's real property through the wrongfully recorded false instruments identified above in civil conspiracy (see California Civil Jury Instructions [CACI] 3600) with NewPenn and MERS as detailed herein above by inducing the public to purchase Plaintiff's Property at a Trustee's Sale without the legal authority;

(b) to sell the "lien" on the property, not the property itself as the wrongfully recorded false NOTS stated on page 2 thereof in the paragraph entitled NOTICE TO POTENTIAL BIDDERS that ORNTIC. This is in violation of ¶ 22 of the purported DOT its Rescission of the lien notwithstanding, which only provides ***<u>a duly substituted trustee</u>*** (which ORNTIC is not) the authority to only sell ***<u>the property itself</u>*** stating: "After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell ***<u>the Property</u>*** at public auction to the highest bidder..." (emphasis added);

(b) to disseminate causing to be disseminated before the public by publishing or causing to be published and posted, the wrongfully recorded false NOD 1, NOD 2 and NOTS; and by

(c) Making or causing to be made or disseminated such statement(s) as part of a plan in conspiracy with the other Malfeasors, to sell Plaintiff's real Property without lawful authority with the actual intent not to sell it, but to confiscate Plaintiff's Property by "Credit Bid" for the benefit of NewPenn (or BONYMCorp) which is also a violation of Cal. Pen. Code § 182 et seq., when the property in its present condition, could not reasonably be sold to the public or a *bona fide* purchaser for value because the Property is encumbered with the clouds on, and breaks in the slandered, unmarketable and unvendible title thereto.

**ORNTIC's Additional Predicate Violations**

178. ORNTIC has further violated 11 U.S.C. 524(a)(2) by attempting to collect the debt purportedly evidenced by the subject Note, deemed unsecured and void by operation of law pursuant to TILA Rescission and subsequently discharged in Plaintiff's Bankruptcy along with all other unsecured debts.

**NewPenn's "Unlawful Prong" Predicate Violations**

179. NewPenn's predicate violations include all previous facts and allegations which are incorporated by this reference as though fully set forth hereat.

As stated herein above, NewPenn, pursuant to the following recorded instruments, violated Cal. Pen. Code § 532(f)(a)(4) which is mortgage fraud, by wrongfully recording the following false instruments NewPenn knew contained deliberate misstatements and misrepresentations including:

(a) the CDOC 1 recorded on 10/28/2014, signed by Ray Rahimi on 10/10/2014, as NewPenn's purported Loss Mitigation Specialist;

(b) the SOT 2 recorded on 10/28/2014, signed by Charlene R. Butler on 10/07/2014, as NewPenn's purported Litigation Foreclosure Specialist;

(c) the CDOC 2 recorded on 12/19/2014, signed by Gary Cowherd on 12/10/2014, as NewPenn's purported Loss Mitigation Specialist;

(d) the SOT 3 recorded on 12/19/2014, signed by Charlene R. Butler on 12/10/2014, as NewPenn's purported Litigation Foreclosure Specialist;

(e) the SOT & Assignment recorded on 12/02/2009, signed by Abraham Bartamian on 11/13/2009 as MERS' Assistant Secretary; and

(f) pursuant to an online search at https://www.mersinc.org/about-us/member-search which shows that NewPenn is a MERS Member.

180. NewPenn was notified by Plaintiff's counsel of the misstatements and misrepresentations contained in the recorded instruments referenced above but NewPenn refused to acknowledge the invalidity of these instruments and rather than rescind the wrongfully recorded false CDOC 1, SOT 2, CDOC 2 and SOT 3, NewPenn chose to ignore the Plaintiffs' attempts at informal resolution to these disputes and proceeded conspire with ORNTIC and Dalaysia Ramirez

ORNTIC's purported Trustee Sale Officer, to record effect the recording of NOTS without any further attempts to confirm the accuracy and completeness of the information or to ensure that ORNTIC or NewPenn reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information, in further violation, *inter alia*, of Cal. Civ. Code § 2924.17(a) and (b) respectively.

181. NewPenn violated Cal. Pen. Code § 115(a) for knowingly offering or causing to be offered, false instruments to be recorded in the Santa Cruz County Recorder's Office, including but not limited to the CDOC 1, SOT 2, CDOC 2, SOT 3 and in conspiracy with ORNTIC and MERS, the NOTS which is considered recording fraud and a felony under Cal. Pen. Code § 115(b). Having full knowledge of the falsity of these instruments and that recording such was a felony, NewPenn also violated 18 U.S.C. § 4 for Misprision of Felony.

182. NewPenn is responsible for violations of the Real Estate Settlement Procedures Act ("RESPA") for failing to disclose the real "Lender." This was a violation of Cal. Fin. Code § 50505 *et seq*.;

> "Under Business and Professions Code section 17200, **any unlawful business act constitutes unfair competition**, and **a private cause of action can be based on the unlawful act** ***<u>even if the predicate law does not provide for a private cause of action</u>***. (*Summit Tech. v. High-Line Med. Instruments Co*. (C.D.Cal. 1996) 933 F. Supp. 918, 942-943.) A violation of RESPA or Regulation X is made unlawful under California law by Fin. C. § 50505." (Emphasis added; see, *Washington Mutual Bank v. Superior Court* (1999) 75 Cal.App.4th 773, 786.)

183. ORNTIC violated Cal. Bus & Prof. Code § 17500 by attempting:

(a) to dispose of Plaintiff's real property through the wrongfully recorded false instruments identified above in civil conspiracy (see California Civil Jury Instructions [CACI] 3600) with ORNTIC and MERS as detailed herein above by inducing the public to purchase Plaintiff's Property at a Trustee's Sale without the legal authority;

(b) to facilitate selling the "lien" on the property, not the property itself as the wrongfully recorded false NOTS stated on page 2 thereof in the paragraph entitled NOTICE TO POTENTIAL BIDDERS that ORNTIC. This is in violation of ¶ 22 of the purported DOT its Rescission of the lien notwithstanding, which only provides ***<u>a duly substituted trustee</u>*** (which ORNTIC is not) the authority to only sell ***<u>the property itself</u>*** stating: "After the time required by

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 80 of 102

Applicable Law, Trustee, without demand on Borrower, shall sell ***the Property*** at public auction to the highest bidder...” (emphasis added);

(b) to disseminate causing to be disseminated before the public by publishing or causing to be published and posted the wrongfully recorded false CDOC 1, SOT 2, CDOC 2 and SOT 3; and by

(c) Making or causing to be made or disseminated such statement(s) as part of a plan in conspiracy with the other Malfeasors, to sell Plaintiff’s real Property without lawful authority with the actual intent not to sell it, but to confiscate Plaintiff’s Property by “Credit Bid” for the benefit of NewPenn (or BONYMCorp) which is also a violation of Cal. Pen. Code § 182 et seq., when the property in its present condition, could not reasonably be sold to the public or a *bona fide* purchaser for value because the Property is encumbered with the clouds on, and breaks in the slandered, unmarketable and unvendible title thereto.

**NewPenn’s Additional Predicate Violations**

184. NewPenn has further violated 11 U.S.C. 524(a)(2) by attempting to collect the debt purportedly evidenced by the subject Note, deemed unsecured and void by operation of law pursuant to TILA Rescission and subsequently discharged in Plaintiff’s Bankruptcy along with all other unsecured debts.

**MERS’ “Unlawful Prong” Predicate Violations**

185. MERS’ predicate violations include all previous facts and allegations which are incorporated by this reference as though fully set forth hereat.

186. MERS violated Cal. Pen. Code § 532(f)(a)(4) which is mortgage fraud, by recording or causing to be recorded, the SOT & Assignment. MERS further violated this section of the Pen. Code conspired with, and as a result, caused the other Malfeasors’ to record the NOD 1, NOD 2, SOT 2, SOT 3 and the NOTS which each Defendant knew or should have known contained deliberate misstatements and misrepresentations were it not for MERS’ wrongfully recording the false and void SOT & Assignment.

(a)   PLAINTIFF contends that MERS also violated Cal. Bus. & Prof. Code § 17500 by:

(1)   Conspiring with the other Malfeasors in an attempt to dispose of Plaintiff's real property by inducing the public to purchase the Property at a Trustee's Sale without any legal authority to do so pursuant to the wrongfully recorded false DOT, SOT & Assignment, NOD 1, NOD 2, SOT 2, SOT 3 and the NOTS;

(2)   Disseminating or causing to be disseminated before the public by publishing or causing to be published and posted, the wrongfully recorded false DOT, SOT & Assignment, NOD, SOT2 and NOTS; and by

(3)   Making or causing to be made or disseminated such statement(s) as part of a plan in conspiracy with the other Malfeasors, to sell Plaintiff's real Property without lawful authority, with the actual intent not to sell, but to confiscate Plaintiff's Property by "Credit Bid" for the claimed benefit of BONYMCorp but actually for ORNTIC, which is also a violation of Cal. Pen. Code § 182 *et seq*., when the property in its present condition, could not reasonably be sold to the public or a *bona fide* purchaser for value because the Property is encumbered with the clouds on, and breaks in the slandered, unmarketable and unvendible title thereto.

**MERS' Additional Predicate Violations**

187.   MERS predicate violations also include those described herein as though fully set forth hereat and: (a) those alleged in Counts 2 and 6 herein; and (b) as the self-proclaimed "nominee" or agent for BONYMCorp through Abraham Bartamian its purported Assistant Secretary MERS has violated Cal. Bus. & Prof. Code § 17095 by directly or indirectly aiding, assisting and conspiring with ORNTIC and NewPenn in their violations of the UPA.

**Defendants Failure to Comply with California Law**

188.   At all times relevant herein, ORNTIC, NewPenn and MERS were conducting business in California, whether authorized or not, and were therefore required to comply with California State laws.  It appears to be the regular and common practice of ORNTIC, NewPenn and MERS, to record or cause to be recorded, false instruments without lawful authority and have done so as alleged herein.  It also appears to be the regular practice of ORNTIC, NewPenn and MERS to make false

allegations; to conduct or cause to be conducted in civil conspiracy with each other, wrongful foreclosures as they are attempting to do with Plaintiff's Property while routinely disregarding applicable laws and statutes related to non-judicial foreclosures.

189. Plaintiff also contends that each act described herein not only represent additional "unlawful prongs" supporting this UCL Count but also satisfies the "unfair" and "fraudulent" "prongs." It is inherently unfair to Plaintiff and the public for ORNTIC, NewPenn and MERS to commit these unlawful, fraudulent, dishonest and deceptive acts, which was the purpose for the Legislature enacting the Unfair Practices Act, in order to protect competitors and consumers from these types of business practices.

**Damages**

190. As a result of ORNTIC, NewPenn and MERS' illegal, fraudulent and unfair acts, Plaintiff has suffered direct injury and economic damages (injury-in-fact) in an amount to be determined according to proof at trial for, *inter alia*:

(a) paying payments that were not due;

(b) for the diminution of the value of her Property;

(c) damages related to rendering the Title to Plaintiff's Property unmarketable and unvendible;

(d) continued impairment of Plaintiff's credit score and rating (a diminished credit score has been found to satisfy the UCL's standing requirement, see *White v. Trans Union LLC* (C.D. Cal. 2006) 462 F.Supp.2d 1979, 1080 and 1084);

(e) Plaintiff has suffered a loss of rental income otherwise available to her by having to reduce the amount charged because of the "in foreclosure status" of the Property evidenced by ORNTIC, NewPenn and MERS' wrongfully recorded instruments identified herein. Such damages shall be in an amount to be determined at trial but in no event less than a $600.00 per month reduction in rental value from the date Plaintiff rented the Property or the equivalent of $24,600.00, the difference between the market rate and amount able to be collected. Such pecuniary loss was proximately caused by the actions of ORNTIC, NewPenn or their predecessors they claim to be successors in interest to, and MERS, having deprived Plaintiff of income caused by Defendants' unfair business practices;

(f) Plaintiff being impeded from seeking and obtaining services from vendors and additional credit therefrom;

(g) for the costs and attorneys' fees attributable to being forced into this litigation by Defendants; and for noneconomic damages for the pain, suffering, inconvenience, mental suffering, emotional distress, humiliation and injury to Plaintiff's reputation she has suffered caused by Defendants' acts. If it were not for ORNTIC, NewPenn and MERS' unlawful debt collection and foreclosure acts and their refusal to correct their violations with the full knowledge that their acts were without authority due to the Rescission, ORNTIC, NewPenn and MERS have also injured Plaintiff because she has been unable to refinance her Property or take advantage of low interest rates, as long as the wrongfully recorded false instruments remain on the record. Neither can Plaintiff sell her Property and receive any value therefrom since the title to her Property has been slandered and rendered unvendible and unmarketable.

191. Accordingly, in addition to the foregoing, Plaintiff demands the relief sought pursuant to Fed. R. Civ. Proc., Rule 8(a)(3) as further specified herein below.

**COUNT 6**
**VIOLATION 42 U.S.C. § 1983**
(Against All Defendants)

192. Pursuant to 42 U.S.C. § 1983, Plaintiff as a citizen of the United States alleges that Defendants their attorneys as officers of the Court and the Court itself are collectively state actors, and vicariously in conspiracy with each other are attempting to violate Plaintiff's due process rights under the 5th and 14th Amendments of the U.S. Constitution and Article I, Section 7 *et seq*. of the California's Constitution. Defendants and the Court are attempting to deprive Plaintiff of her Property and equal protection provided by Federal Rights and privileges she has under TILA and Reg. Z, while acting under the color of authority as is the current custom and practice in California through, *inter alia*, Cal. Civ. Code §§ 2924, 2932 *et seq*.; to collect a debt that is not owed and take ownership and possession of a borrower's property such as Plaintiff's in this case, with no lawful authority.

193. Until determined by the U.S. Supreme Court in *Jesinoski* in 2015, the 9th circuit incorrectly held that in order to assert a rescission under TILA, the borrower had to file a lawsuit, not merely

notice the creditor of the borrower's intention to rescind. As in the *Jesinoski* case, Plaintiff in this instant action timely noticed AWL as the only statutory creditor of her intention to rescind pursuant to the Rescission. As determined by the unanimous Supreme Court, Plaintiff's Rescission in 2007 was effective by operation of law upon the accrual of her right to assert it, in 2015. Because the AWL failed to comply with the mandatory requirements in 15 U.S.C. 1635(b) within the 20-day statutory deadline, not only is AWL time-barred from challenging Plaintiff's Rescission but no defendant to this action has standing to challenge Plaintiff's Rescission because only AWL was the statutory creditor with such standing. Accordingly, this Court lacks subject-matter jurisdiction to rule on the Rescission or any challenge thereto because AWL is not a defendant to this action, no defendant has standing to challenge the Rescission and pursuant to *Jesinoski* in 2015, Plaintiff's Rescission was effective by operation of law in 2007 upon notice thereof.

194. 42 U.S.C. § 1983 states in relevant part:

> " Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

195. 42 U.S.C. § 1983 provides a private remedy for violations of federal law (See *Memphis Community School Dist. v. Stachura* (1986) 477 U.S. 299, 305). Federal law now provides as determined in *Jesinoski*, that under TILA and Reg. Z, Plaintiff had not only the right but her Rescission was effective by operation of law when noticed.

196. The traditional definition of acting under the color of state law requires that Defendants have or are attempting to exercise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" (*West v. Atkins*, 487 U.S. 42, 49 (1988) [quoting *United States v. Classic* (1941) 313 U.S. 299, 326]; *Lugar v. Edmondson Oil Co.* (1982) 457 U.S. 922, 937; *Parratt v. Taylor* (1970) 451 U.S. 144, 152). Such actions can result in liability if the defendant abuses the position given to him by the State (*Monroe v. Pape* (1961) 365 U.S. 167, 172). Defendants are attempting under the color of state law, to use California's Civil Code and this Court to circumvent Plaintiff's federally protected rights.

197. A private actor may also be considered acting under color of state law under certain circumstances (*Wyatt v. Cole* (1992) 504 U.S. 158, 162 citing *Lugar v. Edmondson Oil Co*. (1982) 457 U.S. 922, 929) such as in this instant action in which the California foreclosure scheme was created by the State and where Defendants as private actors attempting to invoke California's non-judicial foreclosure statutes and this Court's enforcement powers with the additional aid of state officials to record the instruments identified herein and the trustee's deed upon sale that would result along with any other instruments and law suit that would follow in an unlawful detainer action to evict Plaintiff from her property. Such actions are considered a private use of state laws in obtaining significant aid from these state officials (e.g. this Court, Defendants' attorneys as officers of the Court, County Recorder(s), Sheriff's Department) and therefore constitutes "state action" for purposes of the Fourteenth Amendment (see *Wyatt v. Cole, Id*. at 162 citing *Lugar v. Edmondson Oil Co*. (1982) 457 U.S. 922) addressing the two conditions also met in this instant action subjecting Defendants to § 1983 liability (also see *Wyatt v. Cole, Id*. at 162 re an attorney being a person who may conspire to act under color of state law in depriving another of secured rights discussing that although an attorney representing a client "does not normally constitute an act under color of state law, . . . an attorney is still a person who may conspire to act under color of state law in depriving another of secured rights").

198. It has become the "custom or policy" and a common practice of California defendants' attorneys as officers of court(s) in non-judicial foreclosure actions, to allege, and the courts themselves to rule, that California's Civil Code sections 2924 through 2924k provide[s] a "comprehensive and exclusive framework for the regulation of nonjudicial foreclosure sales" (*e.g*. the often and commonly cited *Gomes v. Countrywide Home Loans, Inc*. (2011) 192 Cal.App.4th 1149). However, the Homeowner Bill of Rights ("HBOR") was implemented subsequent to *Gomes v. Countrywide* and is often ignored by courts when the HBOR clearly exhibits the *lack* of "comprehensiveness" and exclusivity of California's nonjudicial foreclosure statutes.

199. The other "custom [and] policy," routine and common argument(s) by attorneys as officers of the court(s) and the courts themselves, are that the nonjudicial foreclosure scheme is "exhaustive...with California appellate courts [refusing] to read any additional requirements into the

non-judicial foreclosure statute" (which is untrue since California's Home Owner Bill of Rights was implemented in 2013 subsequent to most of these cases arguing the exhaustive nature of California's non-judicial foreclosure statutes; *e.g*. *Jenkins v. JPMorgan Chase Bank, N.A*. 216 (2013) Cal.App.4th 497 citing *Gomes, Id*., (2011) at 1154); and Courts routinely ruling against plaintiffs' standing to challenge irregularities in transfer of rights and obligations under assignments and substitutions such as the other commonly cited cases including: *Siliga v. Mortgage Electronic Registration Systems, Inc*. (2013) 219 Cal.App.4th 75; *Fontenot v. Wells Fargo Bank, N.A.* (Cal. App. 1st Dist. 2011) 198 Cal. App. 4th 256; and *Herrera v. Federal National Mortgage Assn*. (Cal.App.4th Dist. 2012) 205 Cal.App.4th 1495; which, along with *Jenkins*, have each been disapproved of pursuant to *Yvanova, Id*. (see fn. 13 therein) that borrowers lack standing to challenge an assignment of the deed of trust as void, although for different reasons (*e.g*. an assignment is void for an attempt to transfer after a purported "securitized trust" has closed where in this instant case the SOT & Assignment is void pursuant to the Rescission).

200. Even though *Garfinkle v. Superior Court of Contra Costa County* (1978) 21 Cal.3d 268 is often cited when Constitutional challenges are raised as standing for the proposition that California's nonjudicial foreclosure scheme has been deemed "constitutional," as a private action that did not satisfy the state action requirement of the due process clause of the Cal. Const. Art. I, § 7, *Garfinkle* is substantially distinguishable from this instant action because *Garfield* was a narrow ruling related specifically to "ministerial acts by the county recorder" which were determined did not constitute action by a state official or judicial officer in and of itself; whereas, this instant action, unlike *Garfinkle* is a pre-foreclosure action wherein Defendants' attorneys as officers of the Court and the Court itself are acting in conspiracy with each other and collectively under the color of authority provided by California nonjudicial statutes, to deprive Plaintiff of her Constitutional rights of due process under the 5th and 14th Amendments and the California Constitution.

201. The TILA as a law of the United States and the United States Supreme Court's decision in *Jesinoski* would also necessarily mean that the TILA preempts California's nonjudicial statutes under the Supremacy Clause of the United States:

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 87 of 102

**"Obligation of State Courts under the Supremacy Clause**

The Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and constitution. Their obligation ''is imperative upon the state judges, in their official and not merely in their private capacities. From the very nature of their judicial duties, they would be called upon to pronounce the law applicable to the case in judgment. They were not to decide merely according to the laws or Constitution of the State, but according to the laws and treaties of the United States—'the supreme law of the land'.'' (citation) State courts are bound then to give effect to federal law when it is applicable and to disregard state law when there is a conflict; federal law includes, of course, not only the Constitution and congressional enactments and treaties but as well the interpretations of their meanings by the United States Supreme Court. (citation) While States need not specially create courts competent to hear federal claims or necessarily to give courts authority specially, it violates the supremacy clause for a state court to refuse to hear a category of federal claims when the court entertains state law actions of a similar nature. (citation) The existence of inferior federal courts sitting in the States and exercising often concurrent jurisdiction of subjects has created problems with regard to the degree to which state courts are bound by their rulings. Though the Supreme Court has directed and encouraged the lower federal courts to create a corpus of federal common law, (citation) it has not spoken to the effect of such lower court rulings on state courts." *U.S. Const.*, Art. VI, cl.2 p. 920-921.

202. "Possessory interests" in property are protected by the Fourteenth Amendment (*Abbott v. Latshaw* (3rd Cir 1998) 164 F.3d 141, 144-146 citing *Board of Regents v. Roth* (1972) 408 U.S. 564, 569 and *Fuentes v. Shevin* (1972) 407 U.S. 67, 87). Therefore Plaintiff seeks relief to protect her rights under the U.S. and California Constitutions seeking damages provided, *inter alia*, pursuant to 42 U.S.C. § 1988(b) according to proof at trial and as otherwise demanded pursuant to Fed. R. Civ. Proc., Rule 8(a)(3) as further specified herein below.

## IV. DEMAND FOR THE RELIEF SOUGHT

[Fed. R. Civ. Proc., Rule 8(a)(3)]

203. In addition to the relief requested herein above, Plaintiff seeks the following:

**Re Count 1 Cancellation of Instruments**

204. Plaintiff seeks the Court's declaration, order and judgment pursuant to the previous facts and allegations incorporated by this reference as though fully set forth hereat, that pursuant to Cal. Civ. Code § 3412 and the inherent power of the Court, that the Note, DOT, SOT & Assignment, SOT 2, NOD, SOT 3 and NOTS as claims adverse to, clouding, slandering and disparaging the title to Plaintiff's

Property, are each invalid and void as a matter of law, rescinded and cancelled. Each of these is a written instrument, in respect to which Plaintiff has a reasonable apprehension that if left outstanding each has, and will continue to cause serious injury to Plaintiff and the title to her Property against whom they are each void as a matter of law causing the clouding of, slandering and disparaging the title to Plaintiff's Property which in its present form caused by Defendants' unlawful actions has been rendered unmarketable and unvendible.

205. Plaintiff seeks the Court's order and judgment that will contain the Court's declaration that any purported debt was deemed unsecured pursuant to the Rescission and therefore discharged along with all other unsecured debts in Plaintiff's bankruptcy in 2012.

206. Because the transaction and "loan" were rescinded by operation of law in 2007 and Defendants subsequently and wrongfully recorded false instruments without contractual or lawful authority, Plaintiff seeks the Court's order and judgment quieting title vested in Plaintiff alone.

**Re Count 2 Slander of Title**

207. Plaintiff has suffered direct pecuniary loss, *inter alia*, for having incurred substantial costs and fees associated with litigating these matters and for having made mortgage payments which were not owed that ORNTIC, NewPenn and BONYMCorp rely on to offset their claim for the balance of the debt they wrongfully allege is due and are attempting to collect, by foreclosing on Plaintiff's Property without contractual or lawful authority. This direct pecuniary loss was incurred as the result of ORNTIC's, NewPenn's, BONYMCorp's and MERS' acts. Plaintiff has further suffered economic damages in an amount to be determined according to proof at trial for the diminution of the value of her Property, loss of rental income, and damages related to Defendants rendering the Title to Plaintiff's Property unmarketable and unvendible.

**Re Count 3 Fraud**

208. As a result of ORNTIC's and NewPenn's fraud as specified herein above, Plaintiff has suffered economic damages and accordingly seeks restitution an amount to be determined according to proof at trial for paying payments that were not due which ORNTIC and NewPenn rely on for their claims of rights to foreclose on Plaintiff's Property; and amounts Defendants wrongfully and maliciously allege Plaintiff owes. Plaintiff further seeks damages according to proof at trial for

the diminution of the value of her Property; damages related to rendering the Title to Plaintiff's Property unmarketable and unvendible; for costs and attorneys' fees and costs attributable to this litigation; and, for Plaintiff's loss and reduction in rental income all caused *sine quoa non* by Defendants.

209. Plaintiff seeks compensatory, exemplary and punitive damages for the sake of example and by way of punishing defendants for their fraud and malice intended to cause injury to Plaintiff that was and continues to be despicable with willful and conscious disregard for Plaintiff's rights (see, *inter alia*, Cal. Civ. Code §§ 3294 *et seq*. and 3333). As stated herein above regarding the correspondence between Plaintiff's attorney and ORNTIC and NewPenn and their purported attorneys; Defendants knew before they conspired to record and recorded the NOTS that the Rescission was effective in 2007 pursuant to *Jesinoski* in 2015 but defendants continued to maliciously record the NOTS in reckless disregard for Plaintiff's rights.

**Re Count 4 Violation of the FDCPA and Rosenthal**

210. For the reasons stated herein, Plaintiff seeks injunctive relief, statutory damages and attorneys' fees and costs according to proof at trial.

**Re Count 5 Violation of the UPA**

211. For the reasons stated herein, Plaintiff seeks damages for the direct injury and economic damages (injury-in-fact) she has suffered, in an amount to be determined according to proof at trial including, *inter alia,* but as specified herein above in no event less than the equivalent of $24,600.00, the difference between the market rate and amount Plaintiff has been able to collect for rent collected, as proximately caused by the actions of ORNTIC, NewPenn or their predecessors they claim to be successors in interest to; and against MERS, having deprived Plaintiff of income and the rights to a marketable title to her property caused by MERS and the other defendants as the result of their unfair business practices.

212. Plaintiff seeks compensation for noneconomic damages incurred and proximately caused by Defendants for the pain, suffering, inconvenience, mental suffering, emotional distress, humiliation and injury to Plaintiff's reputation she has suffered as the result of Defendants' acts. If it were not for ORNTIC, NewPenn and MERS' unlawful debt collection and foreclosure acts and their

refusal to correct their violations with the full knowledge that their acts were without legal authority due to the Rescission. ORNTIC, NewPenn and MERS also injured Plaintiff because she has been unable to refinance her Property or take advantage of low interest rates, while the wrongfully recorded false instruments remain on the record. Neither can Plaintiff sell her Property and receive any value therefrom since the title to her Property has been slandered, disparaged and rendered unvendible and unmarketable.

**Re Count 6 Violation of 42 U.S.C. § 1983**

213. Plaintiff seeks relief to protect her rights under the U.S. and California Constitutions seeking damages provided, *inter alia*, pursuant to 42 U.S.C. § 1988(b) according to proof at trial.

**Injunctive Relief**

214. For the reasons stated herein, Plaintiff seeks a permanent injunction enjoining Defendants, their predecessors, successors, agents, nominees or assigns, from pursuing the collection of the purported debt or from foreclosing on Plaintiff's Property pursuant to the recorded or other instruments identified herein.

**42 U.S.C. § 1988 and Tort of Another; Attorneys' Fees and Costs**

215. Rosenthal, FDCPA (15 U.S.C. § 1692 *et seq*.), 42 USCS 1983 and 1988 each authorizes compensation for attorneys' fees which Plaintiff seeks.

216. In the absence of a special agreement, statutory provision, or exceptional circumstances, attorney's fees are to be paid by the party employing the attorney. See Cal. Civ. Proc. Code § 1021. "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person" may recover attorney's fees. *Prentice v. N. Am. Title Guar. Corp*., 59 Cal. 2d 618, 620, 30 Cal. Rptr. 821, 381 P.2d 645 (1963). In Prentice, as in this case, the actions of ORNTIC, NewPenn and MERS have forced Plaintiff to bring this lawsuit to protect her rights. *Monday v. Saxon Mortg. Servs*., 2010 U.S. Dist. LEXIS 125470 (E.D. Cal. Nov. 29, 2010).

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 91 of 102

**Other**

217. Because the Title to Plaintiff's Property has been rendered unmarketable and unvendible by Defendants' acts, Plaintiff seeks the Court's order requiring Defendants, jointly and severally, to pay Plaintiff as Special Damages, restitution for the diminution of the value of her property subsequent to the Rescission in 2007 according to proof at trial, due to Defendants' and their predecessors' acts complained of herein. Such restitution shall be the full appraised value of the property used to justify the purported refinancing transaction the subject of this action in 2004, or in the alternative, the difference between that appraised value used to justify the amount of financing that was sought and the current appraised value once Plaintiff's title is restored thereby justifying a less than total diminution of the value of the Property.

218. Plaintiff seeks punitive damages be awarded by the jury against Defendants for acting in bad faith having the actual knowledge they were violating, and in reckless disregard for, Plaintiff's State, Federal and Constitutionally protected rights. The punitive damages should be sufficient to punish Defendants for their outrageous and reprehensible conduct and to deter Defendants and others like them from similar conduct in the future;

***DEMAND FOR JURY TRIAL***

Dated: March 4, 2016

Ronald H. Freshman
Attorney for KIMBERLY COX

# Exhibit “1”

RECORDED AT THE REQUEST OF
FIRST AMERICAN TITLE COMPANY

Order No.
Escrow No. 150457-5
Loan No.

WHEN RECORDED MAIL TO:

KIMBERLY COX
131 SUTPHEN STREET
SANTA CRUZ, CA 95060

1998-0051587

Recorded Official Records County Of SANTA CRUZ RICHARD W. BEDAL Recorder

02:34PM 01-Sep-1998

| | |
|---|---|
| REC FEE | 10.00 |
| TAX | 298.10 |
| SURVEY | 10.00 |

LPR
Page 1 of 2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

MAIL TAX STATEMENTS TO:

SAME AS ABOVE

DOCUMENTARY TRANSFER TAX $ 298.10

...... Computed on the consideration or value of property conveyed; OR

...... Computed on the consideration or value less liens or encumbrances remaining at time of sale.

THE UNDERSIGNED GRANTOR DECLARES
Signature of Declarant or Agent determining tax — Firm Name

# GRANT DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

ELBA R. SANCHEZ, AN UNMARRIED WOMAN

hereby GRANT(S) to

KIMBERLY COX, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY

the real property in the City of SANTA CRUZ
County of SANTA CRUS , State of California, described as

Dated AUGUST 25 1998

[signature]
ELBA R. SANCHEZ

STATE OF CALIFORNIA
COUNTY OF Alameda } ss.

On August 26 1998 before me, Alfred Gerhard Steingraf, personally appeared Elba R. Sanchez

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

Signature [signature]

ALFRED GERHARD STEINGRAF
Commission # 1111707
Notary Public - California
Alameda County
My Comm. Expires Sep 17, 2000

(This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

1002 (1/94)

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 94 of 102

Order No. 150457-5

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ, CITY OF SANTA CRUZ AND IS DESCRIBED AS FOLLOWS:

LOT 8, AS THE SAME IS SHOWN AND DESIGNATED UPON THAT CERTAIN MAP ENTITLED, "SUTPHENS ADDITION TO SANTA CRUZ, SEPT. 1889, E. D. PERRY, SURVEYOR", FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER ON SEPTEMBER 26, 1889, IN MAP BOOK 10, PAGE 22, SANTA CRUZ COUNTY RECORDS.

EXCEPTING FROM THE HEREINABOVE DESCRIBED LANDS SO MUCH AS WAS CONVEYED TO A. L. WHITNEY BY DEED RECORDED JULY 16, 1890, IN VOLUME 73 OF DEEDS, PAGE 352, RECORDS OF SANTA CRUZ COUNTY, BEING A STRIP OF LAND APPROXIMATELY EIGHT FEET IN WIDTH ALONG THE NORTHERLY LINE OF SAID LANDS TO BE --"PERPETUALLY KEPT OPEN, USED AND MAINTAINED AS AN ALLEY WAY--".

A.P. No.: 008-091-17

# Exhibit “2”

**Kimberly Cox**
**131 Sutphen St.**
**Santa Cruz, CA 95060**

July 13, 2007

America's Wholesale Lender
1455 Frazee Road #102
San Diego, CA 92108; and
P.O. Box 10219
Van Nuys, CA 91410-0219

Re: Rescission of Loan Number 85583668

**NOTICE OF RESCISSION OF LOAN UNDER REG. Z AND 12 CFR 226.23**

Dear Sirs:

I was attempting to get in touch with who I was led to believe was my lender for the loan number identified above. After a review of a copy I had of the deed of trust I saw that it stated my lender was America's Wholesale Lender which I never knew before. The deed of trust stated that America's Wholesale Lender was a New York Corporation. However, after I searched the New York Secretary of State's website so I could get in touch with you I was unable to find any New York corporation listed with that name. I decided to send this notice of rescission to you at the address above, which is the only physical address I could find in the copies of closing documents I had. The address on the deed of trust was a post office box in California which was not consistent with the claim that you were a New York Corporation and different than the other physical address in San Diego I found in the paperwork.

Pursuant to the Truth in Lending Act, 15 USC Section 1635 ("TILA") and Regulation Z and 12 CFR 226.23, I hereby rescind the above-referenced loan due to violations of TILA which

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 97 of 102

includes, but is not limited to the unlawful failure to give me timely, accurate and proper material disclosures and notices under TILA.

I am ready, willing and able to tender the property or the reduced payoff amount in the form of money, once a proper accounting is produced and the applicable credits have been documented and applied to the payoff balance or I will pay you the entire amount I borrowed if all payments I have paid are returned. My offer of tender is also subject to and conditioned upon your production of the original note and deed of trust along with verifiable proof of ownership.

Pursuant to TILA and Reg. Z, you are hereby advised that your alleged security interest, which I contend was void as drafted, is now certainly and additionally void by this notice of rescission by operation of law. You now have twenty (20) days in which to accept my offer of tender of the property or return all my payments not accounted for, terminate the deed of trust and record or provide me with the written deed of reconveyance of the note on my property otherwise this rescission will automatically terminate said security interest and ownership of my property will vest in me without any obligation to pay any more for it.

Please contact me at your earliest convenience at my address listed above to facilitate consummating this rescission.

Time is of the essence in this matter.

Sincerely,

Kimberly Cox

# CERTIFICATE OF SERVICE

I CERTIFY THAT ON THE 13TH DAY OF JULY, 2007, I MAILED A COPY OF THE DOCUMENT(S) ENTITLED:

**NOTICE OF RESCISSION OF LOAN UNDER REG. Z AND 12 CFR 226.23**

TO:

**AMERICA'S WHOLESALE LENDER**
**1455 FRAZEE ROAD #102**
**SAN DIEGO, CA 92108; AND**

**P.O. BOX 10219**
**VAN NUYS, CA 91410-0219**

I ENCLOSED THE DOCUMENT(S) IN A SEALED ENVELOPE ADDRESSED AND ON THE SAME DATE AS INDICATED HEREIN ABOVE WITH THE POSTAGE FULLY PREPAID BY PLACING THE ENVELOPE FOR COLLECTION AND MAILING BY THE UNITED STATES POSTAL SERVICE FOLLOWING OUR ORDINARY BUSINESS PRACTICES OF WHICH I AM READILY FAMILIAR.

**I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT**

**DATE:** 7/13/2007

CHARLES WAYNE COX
*Name*

*Signature*

Ronald H. Freshman, CA Bar No. 225136
Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Telephone: (858) 756-8288
Facsimile: (858) 964-1728
E-mail: ronfreshman@gmail.com

Attorney for Plaintiff Kimberly Cox

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY COX,<br><br>Plaintiff,<br><br>v.<br><br>OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY;<br><br>NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING;<br><br>THE BANK OF NEW YORK MELLON CORPORATION AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF CWMBS INC CHL MORTGAGE PASS-THROUGH TRUST 2005-02 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-02; and<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>Defendants. | Case No. 5:15-cv-02253-BLF<br><br>**NOTICE OF CONSTITUTIONAL QUESTION**<br><br>[Fed. R. Civ. P., R. 5.1 *et seq*.] |

Pursuant to Fed. R. Civ. P., R. 5.1, KIMBERLY COX ("Plaintiff") by and through her attorney, hereby provides the California Attorney General, notice of the following constitutional question which is alleged in Plaintiff's Second Amended Complaint served contemporaneously herewith.

The question is briefly stated as follows:

**Have Defendants, in an ongoing conspiracy with each other (see 42 U.S.C. § 1985) and using attorneys as officers of the Court and the Court itself under the color of State Law (Calif. Civ. Code §§ 2920 *et seq*.) while attempting to enforce said State Laws, abridged the rights, privileges of, and subjecting Plaintiff as a Citizen of the United States, to the deprivation of Plaintiff's rights, privileges and her Property protected under the Truth in Lending Act and Regulation Z as laws of the United States, thereby denying Plaintiff her right to due process and equal protection under the 5th and 14th Amendments of the U.S. Constitution and Article 1 Sec. 7 of California's Constitution?**

Notice was provided with a copy of the Second Amended Complaint to:

**OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 944255
Sacramento, CA 94244-2550


Dated: March 4, 2016

Ronald H. Freshman
Attorney for KIMBERLY COX

Case 5:15-cv-02253-BLF Document 93 Filed 03/04/16 Page 101 of 102

Ronald H. Freshman, CA Bar No. 225136
Law Offices of Ronald H. Freshman
3040 Skycrest Drive
Fallbrook, CA 92028
Telephone: (858) 756-8288
Facsimile: (858) 964-1728
E-mail: ronfreshman@gmail.com

Attorney for Plaintiff Kimberly Cox

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY COX,<br>PLAINTIFF,<br>v.<br>OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, *et al.*,<br>Defendants. | Case No. 5:15-cv-02253-BLF<br><br>**CERTIFICATE OF SERVICE** |

**CERTIFICATE OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. My business address in the County of San Diego, State of California is 3040 Skycrest Drive, Fallbrook, CA 92028.

On March 4, 2016, I caused to be served true copies of the following document(s) on the parties below:

**DOCUMENTS**:

1. PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF TO CANCEL INSTRUMENTS AND FOR RESTITUTION; and

2. NOTICE OF CONSTITUTIONAL QUESTION

**PARTIES SERVED:**

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**[1]
C/O Severson & Werson
Attn: David M. Liu
The Atrium
19100 Von Karman Ave., Suite 700
Irvine, CA 92612;

**NEW PENN FINANCIAL, LLC d/b/a SHELLPOINT MORTGAGE SERVICING**
C/O Yu Mohandesi, LLP
Attn: Thuy N. Tran
633 West Fifth St., Suite 2800
Los Angeles, CA 90071;

**THE BANK OF NEW YORK MELLON CORPORATION AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS INC - CHL MORTGAGE PASS-THROUGH TRUST 2005-02**[1]

C/O Yu Mohandesi, LLP[1]
Attn: Thuy N. Tran
633 West Fifth St., Ste. 2800
Los Angeles, CA 90071

C/O The Corporation Trust Co.[2]
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19810; and

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,**
C/O Severson & Werson
Attn: David E. Pinch
One Embarcadero Center, Site 2600
San Francisco, CA 94111

**OFFICE OF THE ATTORNEY GENERAL**[3]
P.O. Box 944255
Sacramento, CA 94244-2550

**BY CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

---

[1] Plaintiff contends these party defendants as named have been served the Summons and original or First Amended Complaint but have not appeared in this action and the attorneys claiming to represent them in fact, do not. Service will not be made on parties that have not appeared or attorneys that claim to represent parties that have not been named or do not exist.

[2] Participants in the case who are not currently registered CM/ECF users will be served by mail or by other means permitted by the Court Rules and on any such other or different date than stated herein, that may be otherwise but as soon as practicable.

[3] Pursuant to Fed. R. Civ. P., R. 5.1 *et seq*., the California State Attorney General has been served by certified or registered mail.

---

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I further declare that I am employed by a member of the bar of this Court at whose direction this service was made.

Executed on March 4, 2016 in Fallbrook, CA

Ronald H. Freshman, Esq.
Attorney for Kimberly Cox